JAMISON, Plaintiff in Error, v. GLASCOCK, Defendant in Error.

29  191
117  295

29  191
152  413

1. A person standing in a fiduciary relation to another will not be permitted, in the management of the property committed to his charge, to derive an advantage at the expense of his *cestui que trust.*

2. This rule applies to the case where a person, in whose favor another has confessed a judgment, accepts a power of attorney constituting him an agent of the latter to dispose of certain lots and parcels of land, and then has an execution issued upon the judgment by confession and levied upon those lots, and purchases the same himself at the sheriff's sale.

*Error to Ralls Circuit Court.*

This was a suit in the nature of a bill for the redemption of mortgaged property. The plaintiff, John Jamison, prays an account and a decree for a reconveyance of the property alleged to have been acquired and held in trust. The facts as they appeared in evidence are substantially as follows: John Jamison, plaintiff in this suit, was collector of the county of Ralls. French Glascock, the defendant, was one of the securities on the official bond of said Jamison. Jamison being a defaulter, Glascock assumed the indebtedness of Jamison to the county, amounting to $608.82, and gave his own bond, with securities, to the county for that sum, the county releasing Jamison. This bond or note of Glascock was dated August 27, 1849. On the 28th of August, 1849, Jamison confessed a judgment in the Ralls circuit court in favor of Glascock for $608.82. The written statement made by Jamison upon which judgment by confession was rendered stated the indebtedness to be "for so much money by the said Glascock assumed for me to the county of Ralls, and paid off by his bond and security, which the said county accepted, and discharged the judgment held by said county against me." The bond given to Ralls county has been fully paid and satisfied—Glascock paying one hundred dollars on August 30, 1849, two hundred dollars on January 1, 1850—and Jamison paying the balance, three hundred and twenty-

six dollars, on June 6, 1850. Jamison went to Texas in the year 1850. Before he left, he executed a power of attorney dated June 12, 1850, to the defendant Glascock and others, constituting them attorneys in fact to collect and receive all debts, dues and demands due to said Jamison, and empowering them or any one of them to sell and convey certain real estate, therein described, situate in Ralls and Marion counties. On the 16th of September, 1850, at the instance of said Glascock, an execution was issued upon the judgment confessed in the Ralls circuit court. This execution was directed to the sheriff of Marion county. This execution was levied on the 8th of February, 1851, upon certain lots belonging to said Jamison in the city of Hannibal. These lots were embraced within the power of attorney given by Jamison to Glascock and others. At the sheriff's sale, March 12, 1851, Glascock became the purchaser of said lots, seven in number, for the sum of one hundred and seventy-five dollars, of which one hundred and sixty-five dollars and eighty-eight cents were credited on the judgment. In the year 1850, one Losey, under a judgment before a justice of the peace in favor of said Losey and against said Jamison, had levied upon five of said lots, and had bid off the same for three dollars and fifty-five cents. On the 21st of September, 1850, Losey, upon receiving the amount of his judgment from Glascock, relinquished his bid. This relinquishment was made to Jamison. Glascock stated to Losey that he was Jamison's agent. One Abner Smith had a mortgage upon the lots in Hannibal for two hundred and six dollars and sixty cents. This mortgage Glascock paid off October 7, 1851, and it was released by entry of record. The transactions had by Smith with Glascock were had with him, as Smith testified, in the capacity of agent of Jamison. Glascock had sold all but one of said lots.

The plaintiff asked the court to declare the law of the case as follows: "1. If it appears from the evidence in the cause that the plaintiff (Jamison) gave to the defendant (Glascock) the judgment by confession given in evidence for

six hundred and eight dollars and eighty-two cents, to indemnify the said defendant as to his liability for that amount as security for said plaintiff in his bond as collector of the revenue in and for Ralls county, Missouri; and that it was then understood and agreed by and between said plaintiff and said defendant that said plaintiff, intending to leave the state soon thereafter, should give the defendant a power of attorney authorizing him to settle up plaintiff's business and sell the real estate now in question; and that in pursuance thereof plaintiff gave defendant the power of attorney read in evidence, and defendant accepted the agency and trust created thereby, and that said defendant, instead of selling and disposing of said lots under said power of attorney, sued out an execution on his said judgment and caused the same to be levied on and sold under said judgment and execution, and bought them in at greatly less than their value—all after plaintiff had left the state, in the absence of plaintiff and without any notice to him—then the finding should be for the plaintiff. 2. If the defendant [plaintiff] confessed the said judgment in plaintiff's [defendant's] favor in consequence of an agreement between the plaintiff and the defendant to the effect that the judgment should be an indemnity to the defendant as to his liability as plaintiff's security in the bond as collector, and for no other purpose, then the said judgment was in the nature of a mortgage, and the lots purchased under the same and bought in by defendant are subject to redemption by the plaintiff, and the finding should be for the plaintiff."

The court refused so to instruct or declare. The plaintiff thereupon took a nonsuit, with leave, &c.

*Porter & Harrison*, for plaintiff in error.

I. Glascock being appointed and having assumed to act as agent for Jamison, in 1850, in taking care of and selling the lots in question for Jamison, he can not be permitted to so use his judgment by confession as to sacrifice his principal's interests to his own advantage. Standing as he did in

a fiduciary relation to said Jamison, all the benefits of the redemption from Losey's execution and sale of said lots, after the reimbursement of his advances and payments for Jamison, enure to Jamison. The court should have declared the law to be as assumed in plaintiff's first instruction. (See Story on Ag. § 210, 215; 1 Story Eq. 321; Jeremy Eq. 395; Hill on Trustees, 157, 535.) The fact that Glascock was a judgment creditor made him none the less an agent and trustee. The fact of the parties assuming the fiduciary relation towards each other, which they did in 1850, imported an agreement that Glascock should pursue that course which would be most promotive of and least prejudicial to Jamison's interests. Equity will imply such an agreement as in point of fact was undoubtedly made in this case.

*Pratt & McCabe*, for defendant in error.

I. The court properly refused to declare the law as prayed. The judgment by confession was not to secure against a contingent liability, but to satisfy, so far as the plaintiff's property would go, a debt which the plaintiff owed the de-the fendant. In the power of attorney no allusion is made to the debt, which plaintiff says was secured by the confession of judgment. The judgment under which the sales were made was totally disconnected with the objects which Jamison had in view when he created the pretended agency, and as a consequence no trust could arise. The confession of judgment gave Glascock a lien on the real estate of plaintiff, and even if a subsequent arrangement had been made between the parties, the lien of his judgment could not have been disturbed, unless the evidence of the agreement was of as high a nature as the record of the judgment. The evidence is altogether insufficient to clothe the land with any kind of trust. Where land is purchased at a judicial sale, it is not competent to show by parol that the purchaser agreed with the former owner to permit the latter to redeem. (8 S. & R. 492.) Glascock never was in a position to have taken advantage of the plaintiff. He did obtain no advantage.

The entire property of Jamison was insufficient to pay Glascock's debt. (9 Wend. 36.) Any declarations that Glascock may have made as to his agency would not raise a trust which equity would enforce. (5 Wend. 389.) There was no fraud.

SCOTT, Judge, delivered the opinion of the court.

This case turns on the propriety of the instructions asked by the plaintiff and refused by the court.

If the substantial facts, whose existence is assumed by the first instruction asked by the plaintiff, are proved, (and in the hearing of this writ of error we must take them to be true,) we do not see how the conduct of the defendant can be reconciled to those principles which have been established by courts of equity for the government of the conduct of trustees. The office of a trustee is one of confidence, and he is watched with the greatest vigilance lest he should abuse the confidence reposed in him. - As he voluntarily assumes the trust, the law will not permit him, in the management of it, to make to himself any profit or advantage at the expense of the *cestui que trust*. He can not become the purchaser of the trust property but at the option of those for whom he acts, as he thereby unites in himself the opposing characters of the seller and purchaser — the interest of the former of which is to sell for the highest price that can be obtained, while that of the latter is to buy for the least sum at which the property can be acquired. In such cases equity does not examine for fraud on the part of the trustee who attempts to purchase the subject of the trust, but takes away the temptation, by holding him incapable of making a purchase which shall bind those for whom he is entrusted ; and it gives them the option to vacate or affirm the purchase of their trustee. The rule prevents a conflict between the interests and the duty of the trustee, and shuts out a difficult and embarrassing inquiry into his motives. It is necessary for the security of those whose property is held in trust, and promotes integrity in the dealing of the trustee with the

property that has been entrusted to his care and management.

The defendant having a confession of judgment against the plaintiff, by law he would have a right to enforce the judgment by execution, and to become a purchaser at the sale under it. But there was nothing to prevent the defendant from divesting himself of this right, if he thought proper to do so. Having it in his power to collect his judgment at any time, as both he and the plaintiff knew, what could have been his motive in acting under a power of attorney which authorized him to sell the very lots which were afterwards sold under the judgment? The power of attorney was executed after the confession of the judgment. What hopes must have been excited in the plaintiff by the defendant accepting the power of attorney authorizing him to sell the land? It must have lulled his apprehensions respecting the sacrifice of his property under the judgment which had been confessed. How naturally would the thought occur to the plaintiff that the defendant would not use his judgment, as he had a power of attorney to sell. Could the plaintiff have supposed that, after this, the judgment would have been enforced, until he at least had notice of a failure to raise money under the power of attorney? It may be said that the defendant had a right to issue the execution and to become a purchaser under it. But would not the acceptance of the power of attorney be an abandonment of this right? After consenting to sell the lots under a power of attorney, and thus placing himself in a fiduciary relation to them which prevented his becoming a purchaser, he could not use his judgment in such a way as to relieve himself from the incapacity to which he had voluntarily subjected himself. As his rights as a creditor were in conflict with his duties as an agent, the former must yield to the latter. By taking upon himself the office of agent, he waived his right as a creditor so far that he could not become a purchaser.

The case of Rogers v. Rogers, in Hopkins' Ch. R. 515, is very similar to that before us. There, a person by his will

Jamison v. Glascock.

appointed an executor. Between the time of making the will and the death of the testator, the person named as executor became a judgment creditor of the testator, and after his death qualified as executor. The testator left debts unpaid and an estate consisting of personal and real property. The personal estate was insufficient to pay the debts. The executor caused all the lands of the testator to be sold under an execution issued upon the judgment held by himself as a creditor, and he became a purchaser. The sale and purchase were vacated at the instance of other persons interested in the estate of the testator. The chancellor remarked : "If the executor had not accepted the trust, he would have been at full liberty to pursue all his remedies for the satisfaction of his judgment; and if loss to others had followed the exercise of his rights as a creditor, he would not have been responsible. When he accepted a trust which imposed on him the duty of taking every legal and prudent measure to pay the debts of his testator from the personal and real estate, he was no longer at liberty to exert his rights as a creditor in opposition to his duties as executor. He continued a creditor, but he relinquished any right of a creditor which might interfere with his duty as a trustee. Having accepted the trust, he could not, in the character of creditor, do any act which should subvert or impair the interests of those for whom he was trustee."

The circumstance that the trustee was an executor constitutes no real difference between the case cited and that now under consideration. The executor, knowing that he was a judgment creditor, voluntarily took upon himself the office of executor. There was no legal compulsion on him to accept the duty of executing the testator's will. Thus willingly making himself a trustee, the executor was held to have relinquished his right to become a purchaser at a sale of the property with which he was entrusted. So here, although the judgment creditor might have enforced his judgment and have become a purchaser at a sale under it, yet, voluntarily clothing himself with a trust in relation to the

property which disqualified him from acquiring it at a sale, he must be regarded as having renounced that right. The rule of equity applicable to this subject extends not only to trustees strictly so called, but also to persons standing in a similar situation,—such as executors dealing with the estate of their testator; or committees with the estate of the lunatic; or commissioners, assignees, or solicitors of a bankrupt or insolvent estate purchasing any portion of the assets; or the agent of the trustee who becomes the purchaser of the trust property; or a governor of a charity taking a lease of the lands of a charity; or an agent for buying or selling property buying or selling for or to himself. In none of these instances will the transactions be suffered to prevail against the equitable rights of the injured parties. (Hill on Trustees, 223.)

We deem that most of the grounds taken by the defendant in support of the judgment have been answered in what has been already said. We do not see what the statute of frauds has to do with this controversy. If the case is as stated in the first refused instruction, then, if it is within the statute of frauds, so are all the cases in which the trustee becomes a purchaser of the trust fund; for this suit can be maintained on no other ground than that a trustee charged with a trust in relation to property has become the purchaser of that property.

Why does the defendant attempt here to explain the object of the power of attorney, after having so emphatically denied that he ever accepted any agency under it? He asserts here that the bulk of the plaintiff's property was in Ralls county. This may be probable, as he took a confession of judgment there, the lien of which we may suppose he thought would be a sufficient security for his debt; but this fact is not in the record. We may not know how the facts are in relation to this matter, but we know the lien was only such in the county in which the judgment was confessed. Assuming that the bulk of the property was in Ralls, the plaintiff asks why this suit was not brought for the lands in Ralls county.

This inquiry implies that lands, were sold in that county to pay the defendant's debts. But if the bulk of the property was there, why would he go to Marion county, where his judgment was no lien, and seize property to satisfy his debt, unless he would tell us that all the property in Ralls had been exhausted. If he would turn away from property in that county subject to his execution, and go into Marion in search of town lots, it would certainly be a circumstance against him. We do not know how this matter is, but we think it very singular that it was not fully explained in the court below.

We are of opinion that there was no error in refusing the second instruction, as there was no evidence to warrant it. Reversed and remanded; the other judges concur.