## NEWMAN v. NEWMAN, Appellant.

### Division Two, November 28, 1899.

1. **Trust Property:** DEATH OF TRUSTEE: HEIRS NECESSARY PARTY. Where real estate is conveyed to a trustee, his heirs and assigns, to the use and for the benefit of another, the title on the trustee's death descends to his heirs. And in a suit by the *cestui que trust* to recover the property and vest the title in a new trustee, on the ground that the trustee in his lifetime illegally conveyed the same, the heirs are necessary parties for that part of the decree vesting the title in a new trustee, although the trustee by will devised all his property to the defendant as trustee, and made him executor.

2. **Contract:** SUBSTANTIAL PARTIES: TRUSTEE. A trustee is a substantial party to a contract for the conveyance of real estate which says that the legal title stands in his name as trustee for another signer.

3. **Married Woman:** MONEY ACQUIRED: DURING COVERTURE: PRESUMPTION. Where money for the carrying out of a contract was furnished by the wife, and all parties thereto treated it as her separate estate, and it was received from her as such, the law will not presume that it was acquired by her during coverture from her husband, even though the contract itself recites that it was furnished by him.

4. ————: SECURITY FOR HUSBAND'S DEBT: EVIDENCE. A recital in a contract signed by a married woman that she is security for the payment of certain of her husband's notes does not bind her separate estate for the payment of such notes. Nor is it evidence that she was such security unless such notes were signed by her or their payment guaranteed by some writing.

5. ————: NOVATION. There can be no novation by a married woman of her husband's debt except by contract. And unless the evidence shows that she agreed to take up and become personally responsible for his debts there was no novation.

6. ———: TRUSTEE'S FIDELITY. A trustee who holds property in trust for the use and benefit of another can not use it for his own personal advantage.

7. ———: ———: RELATIONSHIP DISSOLVED BY DEED: FRAUD. A trustee held real estate worth $11,250 in trust for the use of the wife of his son, who was insolvent and who owed him $8,000. The trustee joined her in a deed to another son, who also held a note against her husband for $2,712.50, and this grantee turned over to her his note and that of his father and $537.50 in money and then conveyed the property to his father, the trustee. *Held*, that the deed signed by the wife and her trustee, being a part of a transaction that benefited him at her expense to the amount of $8,000, did not sever the relationship, but must be set aside as in fraud of her rights.

8. ———: ———: ———: RESTITUTION: IN STATU QUO. In such case the court can restore the *status quo* by setting aside the deeds from her and the trustee, etc., on the payment by her of the $537.50, and by requiring the executor of the deceased trustee to pay a mortgage placed there by him in his own name after he had defrauded her out of her property.

9. ———: ———: LACHES. The plaintiff is not to be charged with laches unless the relative position of the parties to the fraudulent transaction has been altered because of his delay.

### Appeal from St. Louis City Circuit Court—HON. LEROY B. VALLIANT, Judge.

REVERSED AND REMANDED.

NOBLE & SHIELDS for appellant.

(1) This action should, on plaintiff's theory, and as the court has found that the agreement and deeds of September, 1889, were void, have been brought against the heirs of Socrates Newman, as well as against the trustee under his will. (a) His will could not devise what he absolutely had no title to, as the decree, if valid, determines. (b) The Roger's deed was to the trustee and his heirs, and those heirs were necessary parties. (c) Without the heirs as parties, the court was without jurisdiction to vest title in a new trustee, as it does in the Mississippi Valley Trust Company. Ewing v. Shannahan, 113 Mo. 188; Hook v. Dyer, 47 Mo. 214. (2) The

quadrilateral contract of September 16, 1889, was in substance with Lewis E. Newman alone, and was valid when made, and was completely performed by him. (a) The evidence shows clearly it was William's money, or the proceeds of William's property, that paid off the then existing deed of trust. (b) The presumption of the law is, that William furnished the money, even if paid by hand of the wife, and notwithstanding the statute in relation to married women. Seitz v. Mitchell, 94 U. S. 580; Weil v. Simmons, 66 Mo. 617; Sloan v. Terry, 78 Mo. 626; Crook v. Tull, 111 Mo. 290; Patton v. Bragg, 113 Mo. 601. (c) By this agreement there was a complete and executed novation of the debt whereby William A. Newman and the plaintiff were legally released from their obligations to Socrates Newman and Lewis E. Newman respectively, and Lewis became bound to Socrates for that part due him. Black v. Paul, 10 Mo. 103; Edgell v. Tucker, 40 Mo. 523; Garrison v. O'Donald, 73 Mo. App. 621; Brown v. Croy, 74 Mo. App. 462. (d) The agreement by plaintiff was one by the plaintiff affecting her separate estate, and which she was competent to make, and the admissions and representations in which were of binding force upon her. As to this estate she is to be treated as a *feme sole*. She is at liberty to dispose of it either for her own benefit or for the benefit of another, as security, or otherwise. Siemers v. Kleeburg, 56 Mo. 196; Turner v. Shaw, 96 Mo. 22. She could bind it as surety as much as she could as a maker of a note. Bank v. Taylor, 62 Mo. 338; Lincoln v. Rowe, 51 Mo. 571; Claflin v. Van Wagoner, 32 Mo. 252; Moeckel v. Heim, 46 Mo. App. 348. It is not necessary that her contract should be in writing. Miller v. Brown, 47 Mo. 504; Lee v. Cohick, 39 Mo. App. 672. Her admissions contained in the agreement are competent and of binding force. Hach v. Hill, 106 Mo. 18. (3) The conveyance of Lewis E. Newman servered the relation of beneficiary and trustee that had existed between plaintiff and Socrates, and thereafter Socrates could deal with the purchaser as to the

property, without future accountability. Boehlert v. Mc-Bride, 48 Mo. 505; Cotton v. Stanford, 82 Cal. 351; State ex rel. v. Jones, 131 Mo. 207; Johnson v. Johnson, 5 Ala. 90. (a) The conveyance, if it had been directed by the beneficiary to the trustee, would not have been void. State ex rel. v. Jones, 131 Mo. 194; Kirschner v. Kirschner, 113 Mo. 290; Grayson v. Weddle, 63 Mo. 523; Adams' Equity [3 Ed.], pp. 217n and 218n. (b) Proof was necessary by plaintiff to show that the subsequent purchase by Socrates was in pursuance of an agreement previous to the original contract; the presumption was against it, and the burden was on plaintiff. Boehlert v. McBride, 48 Mo. 505.

W. C. & J. C. Jones for respondent.

(1) A trustee for a married woman, where the terms of the trusts expressly exclude marital rights of the husband, can not appropriate the trust property for the payment of a debt due him by the husband. (a) A conveyance under this circumstance is voidable at the election of the trustee without proof of fraud. (b) The debt of the husband is not a valid consideration for such conveyance. (c) False representations, made to the wife to induce the conveyance, that she is her husband's security, constitute a fraud upon the wife. (d) The burden was on defendant to show *uberrima fides*. This burden defendant failed to carry. Perry on Trusts, sec. 427; Hughes v. Hughes, 87 Ala. 654; Sypher v. McHenry, 18 Ia. 235; Jones v. Smith, 33 Miss. 215; Blanvell v. Ackerman, 20 N. J. Eq. 141; Dodd v. Wakeman, 26 N. J. Eq. 487; Ellicott v. Chamberlin, 38 N. J. Eq. 609; Robins v. Butler, 24 Ill. 387; Dunham v. Miehouse, 70 Ala. 596; Price v. Winter, 15 Fla. 109; Miles v. Wheeler, 43 Ill. 126; Pensamen v. Bleakley, 14 Ill. 15; Borders v. Murphy, 125 Ill. 583; Clark v. Lee, 14 Ia. 426; Andrews v. Hobson, 23 Ala. 235; Campbell v. Walker, 5 Ves. Jr. 680; Bellamy v. Bellamy, 6 Fla. 114; Baker v. Springfield Co., 86 Mo. 75;

Roberts v. Mosely, 64 Mo. 507; Turner v. Butler, 126 Mo. 137. (2) Where the trustee of a married woman has made a conveyance of the trust property to his son and the son reconveys to the father, and on the death of the father this property is devised to his executor, an action to establish a trust in the property in favor of the married woman is properly brought against the executor. (3) · There is no evidence that Elise Newman was security for the debt of William Newman. The burden to prove this was on the defendant. A married woman can not become personally bound as surety for her husband. She can not bind her separate estate to answer for his debt or default by parol. Moeckel v. Heim, 46 Mo. App. 346; Lee v. Cohick, 39 Mo. App. 675; Miller v. Brown, 47 Mo. 504. (4) Laches can not be imputed to plaintiff. (a) The period of delay is less than the period provided in the statute of limitations, which is the guide. (b) Plaintiff was under the disability of coverture. (c) Delay for a period less than that prescribed by the statute of limitations, is insufficient, of itself, to justify the application of the rule of laches. 12 Am. and Eng. Ency. of Law [1 Ed.], pp. 544, 545, 553 and 569; Tyler on Inf. and Coverture [2 Ed.], p. 167; Kroening v. Goehri, 112 Mo. 648; Napton v. Leaton, 71 Mo. 369; Jopling v. Walton, 138 Mo. 485. (5) No tender of the money received by plaintiff was necessary. It is sufficient if the decree is conditioned upon the repayment of the money received by her. Where the plaintiff is or may be entitled to a money judgment in addition to equitable relief, no tender is required. Jopling v. Walton, 138 Mo. 485; Kline v. Vogel, 90 Mo. 244.

BURGESS, J.—This is a proceeding in equity by plaintiff, wife of William A. Newman, against Lewis A. Newman, trustee and executor under the will of Socrates Newman, to have a certain house and lot, described in the petition, reconveyed to a trustee, and that the defendant be required to pay out of the funds of the estate of his testator, Socrates Newman,

a certain mortgage placed thereon by him, and for other relief.

By order of court William A. Newman, husband of plaintiff, was made a party defendant, but the case was subsequently dismissed as to him also by order of court.

The material averments of the petition are, that prior to his death, Socrates Newman, the father of plaintiff's husband, William A. Newman, held the legal title to a certain house and lot in the city of St. Louis described in the petition, in trust, for her use and benefit, upon the terms and conditions set forth in a deed to the property from Joseph Roberts to said Socrates, whereby said property was conveyed to him for her sole use and benefit, free from the marital rights of her husband; that, in September, 1889, said Socrates Newman unmindful of his fiduciary relation towards plaintiff, by coercion, undue influence, abuse, and threats, induced her to sign an agreement wherein it was stated that plaintiff was security for debts due by her husband, William A. to said Socrates, her trustee; that she was not security for any such debts and that no such debts existed; that there was no consideration whatever for said contract or agreement, or for the conveyance subsequently made by her in pursuance of said contract; that, in accordance with the terms of said contract, and induced by the same influence which caused her to sign it, she subsequently conveyed said property to the defendant Lewis E. Newman, the son and present executor and trustee under the will of said Socrates; that, in pursuance of a preconcerted agreement, Lewis E. Newman immediately conveyed the property to his father, Socrates, the trustee of plaintiff, who on the twenty-first day of September, 1891, mortgaged it to one William Booth for the use and benefit of S. H. Eberlein to secure the payment of $7,000, then borrowed by Socrates Newman from said Eberlein, and applied to his own use, and that afterwards said Socrates frequently stated that he adopted this course to get control of said property for the purpose of preserving it for the plaintiff and her children. The

petition further alleges that plaintiff and her children were thereafter ejected from said premises, and that Socrates Newman, and the defendant, Lewis E., combined and conspired to obtain said property without consideration, and to defraud plaintiff, and that the conveyance of the property by the latter to the former was without consideration. That there was at the time of the execution of said agreement a mortgage on the property, which was paid off with money belonging to plaintiff, and not with moneys of her husband, as stated in the agreement.

The petition then prays that said contract be declared void, and decreed to be canceled; that the property be reconveyed to a trustee to be appointed by the court to execute the original trust; that Lewis E. Newman, executor, be ordered to pay off and discharge, out of the funds belonging to said estate, the mortgage for $7,000 placed on said property by Socrates Newman, and for general relief.

Defendant's answer admits that Socrates Newman held the title to said property in trust as alleged by plaintiff; admits the execution of the agreement and the recital therein that plaintiff was security for her husband, William A. Newman; that plaintiff conveyed the property described in accordance with the terms of said agreement, and permitted her trustee to convey the same to defendant, individually; that he conveyed it to Socrates Newman, and that Socrates mortgaged it to secure the payment of the $7,000 borrowed by him from Eberlein, but makes specific denial of all other allegations in the petition.

The answer then alleges the execution and delivery of the agreement and deeds as alleged in the petition; that good and valuable considerations passed therefor; and that plaintiffs should now be estopped from denying that the statements in said agreement are not true. Avers that William A. Newman furnished to Socrates Newman the money with which the mortagage on said property was paid off and discharged, and

denies that it was plaintiff's money.   It denies that the transfers of the property were fraudulent; pleads the statute of
limitations; denies the exercise of any terrorism by Socrates
Newman or himself over plaintiff, denies the alleged declaration of Socrates Newman, and alleges that plaintiff was guilty
of such laches and delays in bringing her suit as should and
does bar her right of action if any she had.

Plaintiff replied to the answer denying all new matter
therein.

Plaintiff acquired the property in question from Joseph
Roberts on March 21, 1887, for the consideration of $11,250,
who conveyed it by deed to Socrates Newman as trustee, in
trust for the sole and separate use of plaintiff and her heirs
and assigns forever, to the exclusion of all marital rights and
as tenant by the curtesy of her husband, and with the unrestricted right in her to direct, in writing, such conveyance or
disposition of the property as she might at any time see proper.
The trustee covenanted and agreed to execute the trust in
him imposed.   This deed was subject to a mortgage then on
the property to secure the payment of $6,000 which plaintiff
assumed and agreed to pay as part of the purchase money
for it.

On the sixteenth day of September, 1889, a quadripartite
agreement, between plaintiff, Socrates Newman, William A.
Newman and Lewis E. Newman, was executed, wherein it
was recited that William A. Newman was indebted to said
Socrates Newman in the sum of $8,000 and to Lewis E. Newman in the sum of $2,712.50, for which indebtedness the
plaintiff was security; that said real estate was then encumbered in the amount of $6,180; that William A. Newman
furnished to Socrates Newman the money with which to pay
this mortgage; that Lewis E. Newman was willing to purchase
said property at the price of $11,250, the purchase price to
be paid by releasing plaintiff and William A. Newman from
said indebtedness to Lewis E. Newman and Socrates Newman;

that this offer was accepted, the plaintiff and her husband released from said liability, and that plaintiff, her trustee, Socrates Newman, and her husband executed their warranty deed conveying the property to Lewis E. Newman.

The consideration for said conveyance recited therein was $11,250, of which amount only $537.50 was paid to plaintiff, the balance being the so-called release of the said debts of her husband to said Socrates Newman and Lewis E. Newman.

This deed was a general warranty, and recited that the said Elise W. Newman hereby requests and directs the "said Socrates Newman, as her trustee, to sign and seal and deliver this deed as her trustee."

On the thirtieth day of September, 1880, Lewis E. Newman, for the expressed consideration of $11,250, then paid, conveyed by warranty deed said property to his father, Socrates Newman.

On September 19, 1891, Socrates Newman borrowed from one Eberlein the sum of $7,000, for five years for which he gave his notes, with interest notes for semiannual interest at six per cent, and to secure their payment executed a deed of trust on the property to one William Booth as trustee for the use of Eberlein.

Socrates Newman died in July, 1893, and by his will, dated January 14, 1893, and admitted to probate August, 1893, he bequeathed and devised to Lewis E. Newman, after certain pecuniary bequests, all the residue of the estate upon certain trusts, and at the death of the widow to divide the estate into eight equal parts, one of which was to be transferred, share and share alike, to the children of the son William A. Newman; and if anyone of the testator's children, excluding William, died before the widow, leaving no children surviving him or her, the share of such child to be equally divided among his other surviving brothers and sisters. Lewis was made executor, as well as trustee.

On September 9, 1889, plaintiff left with Socrates New-
man, the following papers and property:

A warranty deed (Roberts to trustee).

A deed of 3854 Delmar avenue of Elise W. ⎫
⎬ Agreement.
Newman's trustee with Joseph Roberts.     ⎭

Certificate of indebtedness of B. P. Clapp Ammonia
    Co., in name of W. A. Newman (to be sold for
    face value)...... ............ ......... ..$   34.50
Certificate of indebtedness in name of Elise W. New-
    man (to be sold for face value)............   586.50
Cash currency (paper money) ...............  5,500.00

                                                    $6,121.00
Cash currency (paper money) ...............     59.00
These, it is noted, go to pay mortgage, which was for:
Principal note ........................ ........  6,000.00
Interests ........... .. ....................    180.00

                                                 · $6,180.00

William E. Berger, a witness for plaintiff, testified that
in 1891 he was teller of the Citizens' Savings Bank and knew
the plaintiff, her husband and her father, and that Socrates
Newman told him that he took in the house when he sold it
under the deed of trust for Billy's family, so that they could
have a home of their own, and he held it in that way. That he,
witness, knew of stock of Mrs. Newman which was sold by
Socrates Newman to Tom Gleason, and the proceeds received
by him, and also knew of stock held by W. A. Newman in
the Clapp Ammonia Company; that he thought that Mrs.
Newman's shares were seventeen, which were worth from
$140 to $145 per share, that Socrates Newman said that he
took all of this stock, and took care of the deed of trust on
that property held by Mr. Booth; that Socrates gave his check
for the amount, and William Booth took up the deed of trust;
that he, Socrates Newman, made the remark that he was going
to keep the property for himself on account of Billy's children,

and would allow his family to remain there as long as they wanted to.    That was the statement he made to Mr. Gleason; he told the witness the same thing.

On cross-examination the witness again stated the shares of Mrs. Newman to be seventeen; that William A. Newman between 1887 and 1890 had a hundred shares, or about summer time of 1888; Mrs. Newman and Wm. A. Newman were both original stockholders in the Clapp Ammonia Company; his attention, witness said, was called to the sale when the deed of trust was taken up which was about September 9, 1889. Wm. A. Newman sold stock previous to that occurrence. That was the last of the stock he had.    Know Mrs. Newman had seventeen shares because Gleason said to me, "I have purchased seventeen shares of Ammonia Company's stock," but did not tell witness what he paid a share.    Witness also stated that he knew William held over a hundred shares of the stock, and that he was selling his stock, it may be a year or two before that time, and at as good a price as others.    Gleason died in February, 1891, and witness had purchased stock of him two weeks before at $145 a share.

On redirect examination, this witness stated that he had seen the account before at the Citizens' Bank, at about the time of the transactions, in custody of Socrates Newman, and that Socrates Newman gave a cashier's check from the Citizens' Savings Bank, payable to Wm. Booth & Company, which is the same company as Booth, Barada & Company.

In addition to much of the documentary evidence introduced by plaintiff defendant introduced in evidence the following receipt:

"Received, St. Louis, September 19th, 1899, the sum of $537.50 in cash from Lewis E. Newman, which, with the said $8,000 and the $2,712.50, making the total of $11,250, is the price of said house and lot.        Elise W. Newman."

Also the following agreement, written on the same paper that the account or statement of September 9, 1889, was:

"Socrates Newman having this day paid the debt and discharged the mortgage (for $6,180) on the house on Delmar avenue and the note above mentioned for ($10,000) having been canceled and satisfied and returned to us, the said Socrates Newman is hereby released and discharged of all obligations to us or to either of us by reason of the foregoing paper or by reason of the transactions evidenced thereby.

"Witness our hands and seals this 19th day of October, 1889.                    "Elise W. Newman (Seal.)
                                        "Wm. A. Newman (Seal.)"

The court found the issues for plaintiff and rendered a decree in substantial compliance with the prayer of the petition.

Defendant after unsuccessful motion for a new trial, brings the case to this court by appeal for review.

1. It is insisted by defendant that if it be true as the court found, that the deeds and agreement of September, 1889, were void, the suit should have been brought against the heirs of Socrates Newman, as well as against the defendant as trustee under his will, for the reasons that he could not devise what he had no title to; that the Roberts deed was to Socrates Newman and his heirs, and without the heirs before the court, it was without jurisdiction to vest title in a new trustee as the decree does in the Mississippi Valley Trust Company. Ewing v. Shannahan, 113 Mo. 188, and Hook v. Dyer, 47 Mo. 214, are relied upon as supporting this position. It was ruled in those cases, that upon the death of the trustee in a deed of trust upon real estate, the legal title thereto passes to his heirs, and it becomes their duty to care for the trust property or to have a new trustee appointed. Conceding for the sake of the argument as claimed by plaintiff, and the court so declared, that the deed by plaintiff and her trustee, Socrates Newman, to Lewis E. Newman, and the deed from Lewis back to his father, were void, this would leave the deed from Roberts to Socrates Newman for the use and benefit of plain-

tiff unaffected by the result of this suit, and upon the death of the trustee therein named, whatever interests he had in the property descended to his heirs without whom before the court it had no authority to apoint a new trustee in his stead, and in so far as that part of the decree is concerned it must be held void, and of no force or effect.

2. The next question presented is with respect to the quadripartite agreement of September 16, 1889, which defendant insists was in substance with Lewis E. Newman alone, was valid when made and completely performed by him; that each party to this contract was acting in his individual capacity, and that the substantial agreements were among the others, and not with Socrates.

This agreement in speaking of the property in question, and therein described, says, "the legal title whereof stands in the name of said Socrates Newman, as trustee of the said EliseW. Newman," which of itself refutes the idea that he was not at that time her trustee, and acting in that capacity. And, if further proof of that fact were necessary, it may be found in the deed for the property from Elise to Lewis of date September 30, 1889, made in pursuance of the quadripartite agreement, in whch Socrates joined, and executed as her trustee.   This agreement, and the deed which was made in pursuance of the former's provisions, were both signed on the same day, and acknowledged before the same officer on the same day and must be construed together as parts of one and the same transaction.   But even if this be true defendant claims that William furnished the money to pay the mortgage existing on the property, and obtained his and plaintiff's relief from the debt.   It is true that the agreement recites that William A. Newman furnished the money to pay the then incumbrance on the property, but that recital while *prima facie* true was, we think, clearly overcome by the testimony of the witness Berger, to the effect that the plaintiff, and not her husband, furnished the money to pay this debt. But aside from

the testimony of this witness there were other circumstances which tended to show that the money to pay off the mortgage was furnished by plaintiff, among which is the fact that on the same day plaintiff conveyed the property to defendant she received back from him $527.50 in cash, which seems to be somewhat inconsistent with the idea that William advanced $6,180 to pay the mortgage on his wife's property, for if he had done so it is reasonable to suppose that he would have been repaid part of the advance out of the money received for the property instead of his wife. Moreover, the memorandum or account of September 9, 1889, made recently before the execution of the quadripartite agreement and deed, shows that the money advanced was plaintiff's, not in express terms it is true, but by it Socrates acknowledges the deposit of the money and stocks with him by plaintiff, and she the deposit of her husband's note, subject to a condition of the paper. Among the deposits was a certificate of indebtedness of the Clapp Ammonia Company, for $34.50, in the name of W. A. Newman which was to be sold "for face value," and accounted for to her, which when taken in connection with the facts and circumstances before mentioned show conclusively, we think, that the money to pay off the mortgage was furnished by the plaintiff.

3. But defendant says even if the money was paid by plaintiff, in the absence of evidence to the contrary, the law will presume that money acquired by the wife during coverture came from her husband.

That this is the law may be conceded (Seitz v. Mitchell, 94 U. S. 580; Weil v. Simmons, 66 Mo. 617; Sloan v. Torry, 78 Mo. 623; Crook v. Tull, 111 Mo. 283; Patton v. Bragg, 113 Mo. 595), but should defendant be permitted to invoke that rule under the circumstances disclosed by the record in this case? The stocks and other items from which this money was realized was treated by plaintiff as her separate estate, and so treated by defendant, and by Socrates Newman in their dealings

with her in respect thereto, Socrates received the money from her as her separate estate, paid it out for her use and benefit, to extinguish a debt upon her separate estate which he held in trust for her and his executor should not now be permitted to do what Socrates himself should not be permitted to do if living, that is, deny that the money was in fact her separate property.

4.    Defendant further claims that prior to the execution of the quadripartite agreement, plaintiff was security for her husband's indebtedness to Socrates Newman in the sum of $8,000 and for his indebtedness to defendant in the sum of $2,712.50.    The only evidence adduced to support this contention is the recital to that effect in the quadripartite agreement, in which it is said, that "Elise W. Newman is security for the payment of the said indebtedness," which to give a liberal construction, can but be said to be very unsatisfactory. Certainly if she had become security on the notes by signing her name thereto or have guaranteed their payment some evidence in writing could have been produced to that effect, as it was only in this way that she could have legally bound her separate estate to pay her husband's debts, for in the first place, unless the promise was in writing it would have been within the statute of frauds and perjuries (sec. 5186, R. S. 1889), and in the second place, only in this way could she have bound her separate estate, and no personal judgment could have been rendered against her.    [Moeckel v. Heim, 46 Mo. App. 340; Miller v. Brown, 47 Mo. 504; Lee v. Cohick, 39. Mo. App. 672.]

5.    There was no novation in so far as plaintiff is concerned of the debts owing by her husband to Socrates and Lewis E. Newman.    This could only have been done by contract, and the evidence fails to satisfy us that plaintiff ever agreed to take up, and become personally responsible for, debts which she was in no way legally responsible for.

6. .  Lewis E. Newman individually is not a party to this

suit. The case is prosecuted against him as executor and trustee of Socrates Newman and was so regarded by the trial court.

7. It is further insisted that the sale by the trustee and plaintiff to Lewis E. severed the trust relation between her and the trustee, and that thereafter he could deal with Lewis E. just as if he had never occupied the relation of trustee for the plaintiff. Ordinarily where the relation of trustee and *cestui que trust* has been severed, the former trustee may deal with the trust property without further accountability (Boehlert v. McBride, 48 Mo. 505; Colton v. Stanford, 82 Cal. 351), but where the sale of the wife's separate property, conceded to be at the time of the value of $11,250, is in the first instance made to a member of the family of the trustee, in this instance his son, who in consideration therefor satisfied a debt of $2,712.50, due himself and also a debt of $8,000 due his father and her trustee by her husband (who was at the time insolvent), and the payment to her in cash of $537.50, and the property is thereafter conveyed by the purchaser for the same consideration to his father and the former trustee, these facts are such unmistakable evidence of fraud upon the part of the trustee upon her, that it placed upon the defendant, as the legal representative of the trustee, the burden of showing that the transaction was conducted throughout with the utmost fairness and good faith. It is well settled that a trustee can not use property which he holds in trust, nor his relation to it, for his own personal advantage (Perry on Trusts (4 Ed.), sec. 427; Jamison v. Glascock, 29 Mo. 191); but in violation of this wholesome rule Socrates Newman while trustee for plaintiff joined her in a sale of the trust property to the defendant, at the price of $11,250, who by agreement of all the parties, and as part consideration for the purchase money canceled an indebtedness of plaintiff's husband (who was hopelessly insolvent) to Socrates for $8,000, and an indebtedness to his son, the defendant, in the sum of $2,712.50. By

this transaction the trustee used the trust property to his own advantage and by means thereof realized a large sum of money, or its equivalent, that in all probability he would never have gotten otherwise, while the plaintiff received nothing for her property save the inadequate sum of $537.50. It is true the debts due by her husband to Socrates and Lewis E., amounting in the aggregate to the sum of $10,712.50, were satisfied, but that was of no consequence to her because she was under no obligation to pay these debts. Besides, her husband being insolvent they were entirely worthless. Socrates Newman and defendant were the only persons who profited by this transaction, and that too at the expense of the *cestui que trust* whose interests the trustee was bound both in morals and in law to protect.

It is well settled by an unbroken line of authorities, and founded upon well established principles of justice, that when a trustee, acting for or with his *cestui que trust*, sells an estate and becomes interested in the purchase, the *cestui que trust* is entitled in equity to have the sale set aside, in the absence of clear and unequivocal evidence on the part of the trustee, as in the case in hand, that the sale was for a full and fair consideration, and free from fraud or undue influence.

8.   It is further insisted by defendant, that before the deed to Socrates could be set aside, his estate should, at least, on the plaintiff's theory have been made whole, while the court below allowed only the $537.50, paid to or on account of plaintiff in cash by Lewis.

In order to entitle plaintiff to have the deed from her and her husband and her trustee, Socrates Newman, to Lewis E. Newman, and the deed from Lewis E. to Socrates set aside, she must place the estate of Socrates *in statu quo* by returning to them whatever consideration she received for the property. But as she was in no way responsible for the debts due by her husband to Socrates and Lewis E. she received nothing in

payment for her property except the $537.50, which the court decreed that she should return.

9.   As to the claim that the plea of laches should have been sustained, we are of the opinion that the facts disclosed by the record did not warrant such contention.   While the period of delay to amount to laches may be less than that of the statute of limitations, yet "so long as the relative position of the parties is not altered to the defendant's prejudice, delay is of very little consequence."   [12 Am. and Eng. Ency. of Law (1 Ed.), 544 and authorities cited.]

In this case the relative position of the parties has not been altered by the delay, and the court correctly held that plaintiff was not guilty of such laches as to bar her recovery.

10.   We see nothing objectionable to the form of the decree as by it the right of all the parties interested are protected, and it is in substantial compliance with the views which we have expressed with the exception of that part of it which vests in the Missouri Valley Trust Company, in fee simple, in trust for the sole and separate use of plaintiff, the property in question which is void.

The judgment will be modified to that extent—and affirmed in all other respects.   GANTT, P. J., concurs; SHERWOOD, J., absent.

ON REHEARING.

On motion for rehearing we have again gone over the questions for adjudication presented by the record in this case, and have concluded to reverse the judgment and remand the cause that plaintiff may by amended petition make the heirs of Socrates Newman, including the defendant, in his individual capacity as well also as in his capacity as executor and trustee under the will of Socrates Newman, parties defendant:   For the purpose, in one count in the petition, of having another trustee appointed in place of the deceased trustee and

divesting any possible interest that they may have in their own right in the property in question, and for the purpose, in another count, of divesting Lewis E. Newman of any interest or right he may have as executor or trustee under said will, so that the rights of all the parties interested may be adjusted in this one action.

We, therefore, reverse the judgment and remand the cause to be proceeded with in accordance with the views herein expressed. GANTT, P. J., concurs; SHERWOOD, J., absent.