.HARMS, Respondent, v. WOLF, Appellant.

St. Louis Court of Appeals, October 31, 1905.

1. AGENCY: Attorneys' Fees. Where an agent for an administrator employed an attorney to perform necessary services of which the administrator received the benefit, he was liable to such agent for a reasonable sum paid by the agent for such services.

2. RESCISSION: Prompt Action. A party who has been induced to enter a contract through fraud can not treat it as rescinded and recover the consideration paid unless he promptly demands rescission after discovering the fraud.

3. ———: **Waiver.** If he permits unreasonable delay in his demand to rescind, accompanied with acts which recognize the contract as in existence, this will be construed as condoning the fraud and acquiescing in the validity of the contract.

4. ———: ———: **Promissory Note.** Where the payee of a note due two years after date claimed that, being unable to read English, he was induced to accept it by the maker's representing it to be a demand note, but waited six months after discovering the true tenor of the note, and collected three installments of interest on it, before he demanded the principal, he waived his right to rescind.

5. ———: ———: **Revoking Waiver.** One who has once waived his right to rescind a contract on the ground of fraud, cannot afterwards revoke his waiver.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

AFFIRMED SI, IN PART AND REVERSED IN PART.

*Lee W. Grant* and *Pierre B. Kennedy* for appellant.

Dealing with the fraudfeasor respecting the subject-matter of the fraud, after discovering it, is fatal to the right of repudiation. Taylor v. Short, 107 Mo. 384; Overton v. Brown, 63 Mo. App. 49; Stokes v. Burns, 132 Mo. 214. It is the general rule of the law, that a party who would rescind a contract which has been induced by fraud, must act promptly and make his election to rescind. Paquin v. Milliken, 163 Mo. 79; World Pub. Co. v. Hull, 81 Mo. App. 277. The language of the cases on recission of contracts on ground of fraud, is that he must act promptly. Six months is not promptly. Lewis v. Land Co., 124 Mo. 672; Cohn v. Reid, 18 Mo. App. 115 (123); Estes v. Reynolds, 75 Mo. 563.

*L. Frank Ottofy* for respondent.

(1) The evidence shows that the plaintiff acted promptly after defendant refused to pay the $1,200 note. He tendered it back and brought suit within a month. The evidence does not show that he knew when he accept-

ed interest that defendant would not pay on demand. Even though plaintiff had not read the note the defendant cannot take advantage of this as he cannot be heard to say plaintiff should not have believed him. Wells v. Adams, 88 Mo. App. 227. (2) The demurrer to the evidence on the second count was properly overruled. Slight circumstances of fraud are sufficient to warrant the submission of the issue. Mosby v. McKee, 91 Mo. App. 507. (3) Instruction No. 4 declared what is the law, that in the absence of a special agreement appraisers are entitled to one dollar per day. Plaintiff denied the alleged agreement to pay more. R. S. 1899, sec. 83.

GOODE, J.—Plaintiff is the administrator of the estate of his deceased wife, Louise Harms, who died November 20, 1902. The deceased carried on a dry-goods store on Lee avenue in the city of St. Louis, and was a customer of the defendant, who manufactures and sells shirts at 815 Washington avenue in said city. A few days after the death of Mrs. Harms, the defendant, by letter, offered to advise plaintiff or render any assistance he could in settling her affairs. Harms is a German, unfamiliar with the English language and stood in need of friendly assistance. He likewise needed legal counsel in conducting the administration of the estate and upon the recommendation of Mr. Wolf, engaged the latter's attorney, Lee W. Grant, as counsel. Wolf practically managed the administration and the winding up of the mercantile business of the deceased, the plaintiff being entirely guided by Wolf's advice. The stock of merchandise was sold to B. Nugent & Brother for $1,449.09, which money passed into the defendant's hands as agent of the administrator. The first count of the petition deals with that money, alleging that it belonged to the plaintiff as administrator; that after it was received by the defendant as the consideration for the sale of the merchandise, defendant paid out, under the direction of plaintiff,

$297.31, leaving in his hands $1,151.78 due to plaintiff. Defendant's answer to this count of the petition admits receiving the sum of $1,449.09, but avers that $865.90 had been paid out under the direction of the plaintiff, leaving in defendant's hands a balance of only $583.19. Defendant annexed to his answer an exhibit of the disbursements he had made for the plaintiff, amounting to $855.90, and at the trial all the disbursements alleged by the defendant were conceded except the following: To Wm. Neun and Otto Holler for appraising and handling the stock of merchandise which had belonged to the deceased, $20 each; to Louisa Hesselbarth, $14; cash to plaintiff February 3, 1903, $150 (of this sum Harms admitted receiving only $50, so there is a dispute regarding $100 of that item); to Theo. Schmidt for appraising and taking stock, $25; to Pioneer Knitting Works, $59.63; to Lee W. Grant, attorney, $40. Plaintiff's contention is that the appraisers, Holler, Neun and Schmidt, were only entitled to one dollar a day, unless plaintiff, as administrator, authorized Wolf, who employed them, to pay more. Wolf claimed he paid the $14 to Louisa Hesselbarth as a debt owed for nursing Mrs. Harms. The testimony regarding the item alleged to have been paid the Pioneer Knitting Works showed it was paid by Harms' authority as a debt the deceased had owed. The testimony proved the attorney, Mr. Grant, had served the administrator and was entitled to reasonable compensation for his services, no fee having been stipulated. The disposition the jury was to make of these several items was covered by an instruction from the court that Harms was entitled, as administrator, to recover on the first cause of action the sum of $1,449.09, less the disbursements the defendant had made at plaintiff's instance and request. On that count the jury returned a verdict against defendant for $768.97, or $185.78 more than the defendant admitted he owed. If we take into consideration the fact that it was conceded the three appraisers were entitled to at least one dollar each, the amount of

the contested disbursements was $278.63. Hence, the jury must have found a portion of those items in favor of the defendant, but the larger portion against him. There is a sufficient discrepancy in the testimony to support such a finding, and we have merely to consider the propriety of the instructions. The court is said to have erred in instructing that the three appraisers were entitled only to one dollar a day each, unless it appeared the plaintiff had authorized the defendant to pay them more. The defendant's position is that the appraisers did other work besides making an appraisement; namely, handled the stock, put it in order and assisted in taking care of it until it was sold; that, therefore, they were entitled to reasonable compensation for this work in addition to their fees as appraisers, and the court was wrong in advising the jury that they could recover no more than one dollar a day, unless there was express authority from the plaintiff to pay them more. We might rule that Wolf, as agent for the administrator, had a right to incur the expense of taking care of the stock of goods and to pay reasonably for the necessary help in taking care of it, but for the fact that, by his own statement, he brought this matter down to a question of direct authority. He swore he stated to Harms what he would pay the three appraisers and that the work they would do besides the appraising would earn the promised compensation; that, thereupon, he received authority from Harms to make the arrangement. The latter denied giving the authority. Therefore the decision of whether two of them, Holler and Neun, were entitled to $20 each and Schmidt $25, the five dollars being for extra work, depended on the express authority asserted by Wolf; and the court was right in so instructing.

The instruction which required the jury to make no allowance in favor of Wolf for any disbursements except such as he had paid to plaintiff, or to others at the instance and request of plaintiff, was correct as to all items except the attorney's fee; *because Wolf asserted*

*positive authority from Harms to make all other contested payments.* As to the attorney's fee, the evidence showed some compensation was earned; and by virtue of his agency, Wolf might pay Mr. Grant, whose services Harms had accepted, a reasonable sum without a special order from Harms. Administrators are allowed reasonable counsel fees in settling an estate. The only question for the jury to decide in respect of the fee paid, was whether it was reasonable; for the administrator had no right to refuse compensation to Grant after making use of him. As to that item the court should have so instructed. It was erroneous to require a finding that Wolf paid Grant at the instance and request of plaintiff before he could be given credit for anything paid.

The second count of the petition avers that on the 13th day of February, 1903, plaintiff was the owner of $1,200 in cash, which he delivered to the defendant at the latter's instance and request and which sum the defendant promised to repay on demand, with interest at five per cent per annum; that relying on the representations, honesty and integrity of the defendant, he accepted from him a paper which the defendant explained would entitle him to the said sum of $1,200 on demand; but that defendant knowing plaintiff could not read or write the English language, falsely and fraudulently represented the contents of the paper, which did not entitle plaintiff to the sum of $1,200 on demand, but which as plaintiff afterwards learned, was a promissory note payable twenty-four months after date; that plaintiff tendered said note to defendant and demanded of him the sum of $1,200, which defendant refused to pay. The answer to the second count of the petition admits the loan of $1,200 to the defendant on February 13, 1903, and that defendant executed and delivered to plaintiff his negotiable promissory note of that date, due twenty-four months after, but denies each and every other allegation in the cause of action stated.

There was evidence tending to support the plain-

tiff's averment that the loan was made by him with the understanding it was to be due on demand. He swore he was unable to read the note and that defendant agreed to make the loan payable on demand. Plaintiff made another loan to Wolf of $800 and took a note for it due three years after date; but two months later defendant repaid the principal without paying any interest. Wolf said he did this to accommodate the plaintiff who asked for the money to make a trip to Germany, and that Harms accepted the principal because the note was not due. Wolf testified he borrowed the $1,200 from the plaintiff for two years at five per cent interest, payable quarterly; that he took the money largely to accommodate the plaintiff, who asked him to take it. Harms married again in the latter part of 1903, or early in 1904, and then asked Wolf to repay the $1,200, saying his wife needed the money to buy real estate. Harms admitted learning in August, 1903, that the note was due twenty-four months after date, by showing it to a man named Mielert. Harms first said he knew on July 15, 1903, that the notes were made out for two and three years, respectively, but afterwards said he learned the fact in August. This was just before he asked Wolf to repay the $800 so he could make the trip to Germany. Notwithstanding his knowledge as to the true maturity of the two notes, he made no complaint about the matter; but, on the contrary, received, without protest, only $800 in payment of the three-years' note; on which, according to his version of the contract, he was entitled to interest; and afterwards collected several quarterly installments of interest on the note for $1,200; one as late as February, 1904. He demanded payment of that note February 14th, and tendered it to Wolf in March, just prior to instituting the suit.

The defense to the second count of the petition was that the debt demanded was not due. An instruction in defendant's favor on that count was refused. The jurors were charged that if they found the defendant promised

to repay the loan on demand with five per cent interest, that plaintiff was unable to read and write the English language and relied on defendant's representation that the note entitled plaintiff to payment on demand, and that plaintiff had demanded payment and tendered the note to defendant, he was entitled to recover. The ruling on those instructions is assigned for error.

Counsel for the parties treat the second count as one for the rescission of the loan contract and to recover the sum advanced, with interest from February 14, 1904, when payment was demanded; and so the court below treated it. Accepting that view of the controversy as the true one, the question is, whether the plaintiff acted promptly enough, after he discovered he had been imposed on, in demanding a rescission of the contract and the return of his money, or whether, by delay and acquiescence in the terms of the note, he waived his right to rescind. No doubt a party who is induced to enter into a written contract by misrepresentations, on which, without negligence, he relies, may rescind the contract and recover money or property he parted with in reliance on the false representations. He may either seek a judicial rescission by a suit in equity, or, by seasonably offering the other party whatever was received under the contract and demanding what was parted with, may work a rescission *in pais*. [1 Bigelow, Fraud, p. 73.] A standard writer says that relief at law in favor of the aggrieved party, against fraud in procuring a contract, is of three kinds: the affirmative relief of rescission and recovery of whatever was parted with; the affirmative relief of standing by the contract and recovering damages for the deception practiced by the other party, and the defensive relief of setting up the fraud as a defense to any action brought to enforce the fraudulent obligation. [2 Pomeroy, Eq. Juris. (3 Ed.), sec. 872.] Now a party cannot treat a contract as rescinded and recover what he has advanced, unless he promptly demands rescission after discovering the

fraud. Unreasonable delay, especially if accompanied with acts which recognize the contract as in existence, will be construed as condoning the fraud and acquiescing in the validity of the contract. [1 Beach, Contracts, sec. 821.] Plaintiff's conduct was wholly incompatible with the theory that he resented the imposition practiced on him and repudiated the instrument he had been induced to sign. At least as early as August, 1903, he was apprised of the maturity of both notes, the one in suit, due two years after date, and the other due in three years. Two months later, when he wanted money to go to Germany, he waived the interest on the note due in three years in order to get the principal, and about the same time collected an installment of interest on the other note. In December he collected another installment and in February, still another. It was after these payments of interest that he demanded the principal, never until then having complained about the date of maturity. He has been allowed to treat all those acts as immaterial, rescind the loan and collect interest at six per cent from the time he demanded payment. We regard this recovery as contrary to law. Words or acts which unequivocally import that a party who was deceived into making an agreement, has acquired knowledge of the fraud, but nevertheless recognizes the contract as valid and subsisting, will constitute an election to abide by it and waive his right to rescind; which waiver cannot afterwards be revoked and the contract rescinded. [Bigelow, Fraud, 436; Kerr, Fraud & Mistake (2 Ed.), sec. 381; 1 Beach, Contracts, sec. 810.] A party is not permitted to select his own time and convenience for rescinding, but must act with promptitude. [Hart v. Handlin, 43 Mo. 171; Lewis v. Land Co., 124 Mo. 672, 28 S. W. 324; Cohn v. Reid, 18 Mo. App. 115.] We consider that the learned trial judge correctly treated the question of plaintiff's right to rescind as one of law, there being no material dispute about his conduct. But we must dissent from the ruling that the right had not

been waived. Waiver is a matter of intention, and to our minds, plaintiff's acts clearly exhibit an intention to accept the contract according to the terms of the note. No excuse was offered for his failure to demand a rescission from August, 1903, to February, 1904, or for his acting, meanwhile, as if the two notes truly represented the understanding betwen him and the defendant. Under these circumstances we think the only fair conclusion is that the plaintiff, if he had been imposed on, elected to overlook the wrong.

If the plaintiff will remit the sum of $40 from the amount assessed by the jury as his damages on the first count of the petition, judgment will be entered on that count for the balance with interest and reversed as to the second count; otherwise the judgment will be reversed and the cause remanded with directions to set aside the verdict, enter a finding for the defendant on the second count and retry the issues on the first. All concur.