## SMALL, Appellant, v. SPEECE, Respondent.

**St. Louis Court of Appeals, April 28, 1908.**

1. **REPLEVIN: Counterclaim: Rescission.** In an action of replevin for a piano, the plaintiff claiming under a chattel mortgage given for part of the purchase price, the defendant might maintain in defense a counterclaim asking a rescission of the contract of sale on the ground of fraud and return of the purchase money already paid, under the provisions of section 605, Revised Statutes 1899; such equitable defense grew out of the contract of sale.

2. ———: ———: ———: **Justice of the Peace: Jurisdiction.** But where such replevin suit was brought before a justice of the peace, such defense could not be maintained because justices of the peace have no jurisdiction of equitable proceedings.

Appeal from Stone Circuit Court.—*Hon. John T. Moore,* Judge.

·REVERSED AND REMANDED.

*A. W. Lyon* for appellant.

*J. T. Burgess* for respondent.

As the testimony of defendant and his wife shows that they were induced to purchase the piano in question under and by reason of false misrepresentations and statements of Stephens, and that they relied on

131 App.—33

same, and as soon as they discovered the fraud within a day or two, they notified appellant of the fact and offered to place him in as good position as they found him, by offering to return the piano and also to pay some additional money, which appellant refused. Having done this they could do no more, they chose to rescind the trade on account of the misrepresentations, as they had not got what they bought, and this we think they could do. Cahn v. Reid, 18 Mo. App. 115; Johnson v. Agricultural Co., 20 Mo. App. 100; Toure v. Pauly, 51 Mo. App. 75; Viertel v. Smith, 55 Mo. App. 617; Heating Co. v. Fixture Co., 60 Mo. App. 148; Publishing Co. v. Hull, 81 Mo. App. 277. Appellant's second error complained of is without reasonable error, and the court did right in refusing instruction H, for appellant.

GOODE, J.—Respondent purchased from appellant's agent the piano which is the subject-matter of the present case in replevin. The action was begun December 18, 1905, before a justice of the peace and was afterwards appealed and tried anew in the circuit court. The sale of the piano occurred September 4, 1905, the purchase price being $350, of which $100 was paid in cash and five notes of $50, due at successive periods and secured by a chattel mortgage on the piano, were given for the balance. The mortgage provided that on default in payment of any part of the debt, appellant might declare the whole debt due and payable and take possession of and sell the property, according to the terms of sale stipulated in the mortgage. The first note matured December 4, 1905, and default having been made in the payment of it, the property was replevied in the present action and turned over by the constable to appellant. The complaint is in the usual form for such actions when instituted before justices of the peace, but the answer, which also was filed before the

justice, sets up a novel defense. It first denies appellant was entitled to the piano and then proceeds to set out the facts of the purchase on which respondent relies for a defense. He admits the purchase from appellant's agent, says he desired to buy a Steinway piano, but the agent, wishing to sell the one in controversy, represented to respondent and his wife that the piano sold, which was a McPhail instrument, was as good a piano as a Steinway in make, tone and harmony, would suit them as well and would cost from two to three hundred dollars less. The answer avers the agent knew at the time he made such representations they were false and fraudulent, and respondent, relying on them, was induced by them to purchase the piano in controversy for the price of $350; that he paid in cash the sum of $100 and executed the notes secured by a mortgage on the piano for the deferred payments. It is next averred the piano was not as represented in tone, volume or harmony; was not equal to a Steinway piano, as the agent well knew, and as respondent and his wife discovered a few days after the piano was delivered; that respondent immediately notified appellant by letter he did not want the piano and offered to pay the freight on it to Springfield, Missouri, appellant's place of business; that appellant informed respondent he would send the agent to examine the piano and see what was wrong with it, but the agent never appeared. In view of the foregoing facts, it is alleged respondent was damaged in the sum of $100 by the false and fraudulent representations recited, and he prays judgment for the return of the piano until his damages were paid and his notes returned and cancelled. At the trial in the circuit court appellant introduced in evidence the five notes, the chattel mortgage securing the same and the constable's return, showing he had taken the piano from the possession of respondent and delivered it to appellant. In defense appellant introduced evidence to prove

he and his wife, who in the main negotiated the purchase, were induced to buy the piano by the representation of appellant's agent that it was equal to a Steinway piano, which was the kind respondent desired, in make, tone, volume and harmony, when the agent knew the representation was false.   Evidence was put in to prove the inferiority of the piano in those respects and that as soon as respondent and his wife became aware of its inferiority, they demanded a rescission of the sale, offering to pay the expense of reshipment to Springfield, and to allow appellant $25 on the price.   Some correspondence was put in evidence in which this offer was made by respondent or by his wife for him.   Appellant's letters in reply did not definitely decline the proposal, but insisted, rather, on the high quality of the piano and said the agent would be in Monett, where respondent lived, in a short time, and attend to the matter.   The agent did not arrive, but after the first note fell due, this action was instituted.   The testimony for appellant was that the piano was an excellent one, and no doubt some of the testimony tended to prove it was equal to the Steinway.   The agent so swore, but denied representing to respondent it was as good as a Steinway, and said he merely told respondent and his wife it would suit them as well and was cheaper.   As to these questions there was contradictory evidence for the jury to consider, provided the defense attempted in the answer will lie to respondent's action.   Appellant was entitled under the mortgage to possession of the piano after a default in payment of part of the debt, unless, on the facts stated in the answer, respondent was entitled to retain possession until he was reimbursed the cash he had paid and his notes were surrendered.   In instructing the jury the court so ruled; or the jury were directed, in case they found in favor of respondent on the issues presented by the instructions in regard to the sale having been induced by fraud, to assess his dam-

ages in the sum of $100 and interest on the same at six per cent, and include in their verdict that the notes should be cancelled and returned, provided the jury found respondent had offered to rescind the contract as soon as he discovered the fraud. The jury found the issues for respondent, assessing his damages in the sum of $100 and finding the piano should be returned until the damages were paid and his notes restored and cancelled; and the court, following the verdict, adjudged respondent have and recover from appellant the sum of $100 so found and the return of the piano in question until respondent's notes in question were returned.

It will be perceived the defense rests on a rescission of the contract of sale for the fraud alleged to have been practiced by appellant's agent, and asks that respondent be reimbursed the $100 in cash he was out and the cancellation and return of his notes. Appellant's right to the piano is not disputed except this far: respondent claims the right of possession until he obtains the relief for which he prays. In truth the rescission of the contract of sale necessarily imports that respondent recognized appellant's ownership of the piano and wished to restore it to him, and to have restored to respondent what he had turned over to appellant for the piano. Rescission imports that both parties are to be put *in statu quo,* each receiving what he had parted with to the other. We had occasion in McCormick Harvesting Company v. Hill, 104 Mo. App. 544, 79 S. W. 745, to consider whether or not counterclaims will lie in replevin cases and, if so, under what circumstances. We concluded either setoffs or counterclaims may be pleaded in defense of such actions; that is to say, when the setoff or counterclaim will defeat the right of the plaintiff to recover the property; as, for instance, if he was replevying for default in paying a debt secured by chattel mortgage, a setoff against such debt will lie, because it cuts away the ground on which the plaintiff

demands possession. If the indebtedness to the defendant exceeds the mortgage indebtedness owing to the plaintiff, the excess may be recovered by counterclaim. In the McCormick Company case the counterclaim was based on an alleged overpayment of the chattel mortgage indebtedness under which the company sought to maintain its action. We held the defendant might recover this excess if he proved it had been collected by the company. A further examination of the question has confirmed the opinion that such a counterclaim will lie; for we have found additional adjudications in support of the proposition. [Simpson Press Brick Co. v. Marshall, 5 S. Dak. 528; Aultman v. Forgey, 10 Ind. App. 397; Aultman v. Richardson, 21 Ind. App. 211; Bloodworth v. Stephens, 54 Miss. 475; Rogers v. Kerr, 42 Ark. 100; Ames Iron Works v. Rea, 56 Ark. 450; Baldwin v. Dewitt (Ky.), 43 S. W. 246; and see Wells, Replevin (2 Ed.), 582, et seq.] But this is not equivalent to saying any kind of a counterclaim may be preferred in replevin actions, but only that those may be which will enable, instead of hinder, the court to adjust the rights of the litigants in respect of the "transaction" or the "subject of the action," in the sense those terms are used in the statute regulating counterclaims. [R. S. 1899, sec. 605.] In Anthony v. Carp, 90 Mo. App. 387, the defense interposed was substantially like the one in the present case. Said action was brought on a chattel mortgage given to secure a promissory note for the possession of cattle. The note had been given for the purchase money of the cattle and among the defenses pleaded was one consisting of allegations that the defendant had been induced to purchase the cattle and give the note and mortgage by the plaintiff's fraud; wherefore the defendant prayed the plaintiff be compelled to surrender the note and mortgage for cancellation. The Kansas City Court of Appeals held that as this defense was one in equity, it could not be in-

terposed in a replevin action. Said cause was instituted in the circuit court, and I incline to the opinion the defense would lie under the rulings in this State permitting the equities of parties to replevin suits to be settled in the judgment. The equitable defense grew directly out of the sale of the cattle and was a proper subject of counterclaim. [R. S. 1899, sec. 605.] A similar defense was allowed by the Supreme Court of Arkansas in Ames Iron Works v. Rea, supra, an action of replevin. The obstacle to the counterclaim raised in the present case is, that it seeks equitable relief from a justice of the peace and the statutes withhold jurisdiction of equitable proceedings from justices. [R. S. 1899, sec. 3837; Sandige v. Hill, 70 Mo. App. 71; Morris v. McMahon, 75 Mo. App. 494.] If the justice had no jurisdiction of the defense, the circuit court had no jurisdiction of it on the appeal from the judgment of the justice. [Caffery v. Mining Co., 95 Mo. App. 174, 68 S. W. 1049.] The defense is untenable, not because a counterclaim, either legal or equitable, is never proper in a replevin case, but because the court where it was preferred could not entertain it. It is true an offer to rescind the sale of personal property for fraud, is a matter over which courts of law and equity have concurrent jurisdiction; but in the present instance the relief prayed, to-wit, the surrender and cancellation of respondent's notes, is of a kind which only equity can grant.

Respondent is not remediless but may proceed against appellant in a separate suit, and if the latter is insolvent, may enjoin this proceeding until the rights of the parties are adjusted by a tribunal of competent jurisdiction.

The judgment is reversed and the cause remanded. All concur.