OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1908.

*(Continued from Volume 214.)*

### THE STATE v. W. B. PRIEST, Appellant.

Division Two, December 15, 1908.

1. **GENERAL OBJECTION: Identity.** A general objection to proffered evidence may be disregarded and overruled by the trial court. Such an objection is not sufficient to authorize the appellate court to consider whether or not the trial court committed error in admitting in evidence the records of several judgments showing the conviction of a defendant of the same name of felony and misdemeanors without first requiring the State to prove that defendant in the suit on trial was also the defendant in those cases.

2. **IMPEACHMENT OF DEFENDANT.** Where defendant testifies in his own behalf the State can impeach his credibility as a witness by showing his reputation for morality is bad, whether or not defendant offers testimony to sustain his character. In such case the defendant occupies the same position, as to being impeached and discredited, as any other witness.

3. **CONFLICTING EVIDENCE: Bringing on Difficulty.** Where the evidence as to whether defendant or the person assaulted brought on the difficulty is conflicting, and there is substantial evidence tending to show that defendant was the aggressor and made the assault with the felonious intent of wreaking his malice upon the other, it cannot be said that there was no evidence tending to prove that defendant brought on the difficulty.

State v. Priest.

4. **GOOD CHARACTER: Assumed: Non-Prejudicial Instruction.** Where the testimony tending to show that defendant was of immoral character was brought out by the State in cross-examination of defendant's witnesses for the purpose of discrediting him as a witness, and furnished no basis for an instruction on his good character for peace, quietude and good citizenship, yet if the instruction assumes that he was a man of good character, when the evidence on this question was conflicting, it is not prejudicial, but rather an error in his favor.

5. **INSTRUCTION: Former Convictions: Assumed.** Where the evidence that defendant had been convicted on former occasions of one felony and several misdemeanors was not controverted, it is not error to assume in the instructions that he had been so convicted.

6. ————: ————: **Different Name.** Prima facie W. B. Priest and Wm. B. Priest are one and the same person, and it is proper to designate defendant in the indictment by the initials of his Christian name or baptismal name. And, hence, where defendant was indicted as W. B. Priest judgments of former conviction of Wm. B. Priest are properly admitted in evidence, and if no specific objection is made to the introduction of these records in evidence it is not error to refuse an instruction which would withdraw from the jury a consideration of those convictions.

7. **REMARKS OF ATTORNEY: Withdrawal.** Where upon objection made to certain remarks of the prosecuting attorney the court said, "It is out of line; the jury should disregard the allusion," and the prosecuting attorney then said, "Counsel withdraws the remark, if out of line," the court did everything necessary to remove any prejudicial effect of the remarks, and the judgment will not be reversed.

Appeal from Monroe Circuit Court.—*Hon. D. H. Eby,* Judge.

Affirmed.

*J. H. Whitecotton* and *E. L. Alford* for appellant.

The record shows the introduction of certain circuit court records and certain justice of the peace records which tended to prove that defendant had been convicted of misdemeanors. Defendant insists that it was reversible error on the part of the court to admit

said records in evidence over his objections. There was no testimony in the case tending to show that William B. Priest and W. B. Priest, defendant in this case, are one and the same person, and without defendant W. B. Priest being identified as the same person as William B. Priest said records showing William B. Priest as defendant should not have been admitted. The doctrine of *idem sonans* not applying and the party convicted in said courts not being identified with defendant in any way, the judgments were not prima-facie proof that defendant W. B. Priest was the same party. State v. Griffie, 118 Mo. 188. Defendant is charged with an assault with intent to kill. The testimony in chief tends to prove the assault as charged. The defense tends to prove that the assault charged was made in self-defense. The State rested its case on the testimony of the prosecuting witness and one of the eye-witnesses, in which testimony there is no suggestion of any attempt at impeachment, and under the law there could not properly be any. Defendant in the presentation of his defense testified only as to the difficulty and facts leading up to it. There was no testimony on the part of defendant or his witnesses as to defendant's character. At the close of defendant's case the State offered said witnesses and they gave testimony which tended to prove that defendant's reputation for morality was bad. This testimony as clearly shown by the record was not offered for the purpose of affecting the credibility of defendant as a witness, but to prejudice the jury against defendant and thereby secure a conviction. This evidence was not directed to the impeachment of defendant in his character as a witness, but as a defendant only. Defendant not having put his character in issue, this was error. State v. Beckner, 194 Mo. 281.

· *Herbert S. Hadley,* Attorney-General, and *Frank Blake,* Assistant Attorney-General, for the State.

(1) The evidence introduced by the State after defendant took the stand, showing the general reputation for morality of defendant, was perfectly proper. State v. Beckner, 194 Mo. 281. (2) The court records, introduced in evidence, showing that defendant had been convicted of various offenses, were admissible. Secs. 2637, 4680, R. S. 1899; State v. Heusack, 189 Mo. 295; State v. Blitz, 171 Mo. 530. Defendant makes the point for the first time in his brief that there was no evidence to show that William B. Priest and W. B. Priest, the defendant, were one and the same person. In objecting to the introduction of the records at the time of the trial, and in his motion for new trial, he did not object to the testimony upon this ground, and he cannot now charge such error. Under the circumstances, he should have taken the stand and testified that he was not the William B. Priest convicted in the cases mentioned, if such was the fact. As he did not do so, and did not properly object to such testimony, the presumption must be indulged that he is the same party proceeded against in the cases mentioned; or, that he waived his objection to the testimony upon the theory now advanced. The court will note that some of these cases were against W. B. Priest and some against William B. Priest. (3) The 7th instruction, telling the jury that they could take into consideration defendant's good character in determining his guilt, is also criticised as being "unwarranted by the testimony." We admit that there was only meager testimony that the defendant's character was good, hardly enough to form the basis for such an instruction. Defendant was not prejudiced by the instruction, however, but rather benefited, for the instruction assumed that there was evidence of defendant's good character.

BURGESS, J.—At the December term, 1907, of the Monroe Circuit Court, the defendant was found guilty of felonious assault with intent to kill, and his punishment assessed at a fine of one hundred dollars and imprisonment in the county jail for a period of three months. He appeals.

The testimony tended to prove that on the 29th day of September, 1906, in a saloon at Stoutsville, Monroe county, the defendant shot and wounded one Towney Finnegan. Finnegan was about to leave the saloon when the defendant and some others came in. The defendant called to him and said that he wanted to talk to him. Finnegan stopped and the defendant walked up to him and said. "I heard you said Montgomery whipped me easy up at Clapper." Finnegan replied that he did not know that he said anything about it, and that there was no need of their having any trouble over the matter; and just then, according to Finnegan's testimony, the defendant struck him with his left hand and put the other hand back to his hip pocket. Finnegan grasped the defendant's arm and pushed him back into the bar room, where the scuffle continued until the saloonkeeper, John Buckman, came out from behind the bar and separated the men, telling them that he wanted no trouble in his house. After the combatants were thus separated, and some six or seven feet apart, and while the saloonkeeper was holding the defendant, the latter pulled out his pistol and shot at Finnegan, the ball striking him in the neck, near the collar bone. After the shot, Finnegan, who was wounded but slightly, rushed over to the defendant and helped to hold him while his revolver was being taken away from him, and then Finnegan left the saloon. It appears from the testimony that the defendant and one Montgomery had a fight at Clapper some two months before, and Finnegan testified that the defendant appeared to be mad at him

ever since then. The defendant accused Finnegan of taking sides in this quarrel, and refused to permit Finnegan to wash the blood off his face after this prior encounter, telling him that he did not want to have anything to do with him.

The testimony is very conflicting as to who began the difficulty, the prosecuting witness and the defendant each testifying that the other assaulted him. Several witnesses for the defense testified that Finnegan struck the first blow. The defendant himself testified that Finnegan struck him several times, and was striking him at the time he drew his revolver and shot. There was some evidence that one of defendant's eyes was blacked and Finnegan's face scratched up as results of the encounter.

There was considerable testimony to the effect that the defendant was of a quarrelsome disposition, and that his reputation for morality was bad. The court records were introduced by the State to show that the defendant had been convicted of a number of misdemeanors. Several witnesses for the defendant testified that his reputation for honesty and morality was good.

It is claimed by defendant that error was committed in admitting in evidence, over his objections, the records of several judgments showing the conviction of Wm. B. Priest of felony and of misdemeanors, without first proving that the defendant, W. B. Priest, was the same person as the said Wm. B. Priest. The defendant's objection at the time to the introduction of this evidence, as also appears from his motion for a new trial, was a general one, which, as has been held by this court in a long line of decisions since the case of Margrave v. Ausmuss, 51 Mo. 561, may be disregarded and overruled by the court. [State v. Brown, 209 Mo. 413.]

It is also insisted that the court committed error

State v. Priest.

in permitting the State to introduce evidence tending
to show that defendant's reputation for morality in
the neighborhood in which he lived at the time of testi-
fying was bad, for the purpose of discrediting him as
a witness. The position of the defendant is that since
he introduced no evidence to sustain his character,
although testifying as a witness in his own behalf, it
was not permissible for the State to introduce the
evidence complained of. But this, we think, is a mis-
apprehension of the law upon this subject. When a
defendant in a criminal case avails himself of the right
conferred upon him by statute to testify in his own
behalf, he occupies just the same position, with re-
spect to being impeached or discredited, as any other
witness. The State had the right to impeach the char-
acter of defendant as a witness by showing his gen-
eral moral character to be bad. [State v. Beckner,
194 Mo. 281; State v. Anslinger, 171 Mo. 600; State v.
Weeden, 133 Mo. 70.]

The defendant challenges about all of the instruc-
tions given for the State, but no specific objections
are urged against any except instructions four, seven
and nine. The objections urged against the fourth
instruction are, first, that there was no substantial
evidence tending to prove that the defendant brought
on the difficulty, and, second, that said instruction does
not give the defendant the full benefit of the right
of self-defense. We are unable to admit these con-
tentions. While the evidence is somewhat conflicting
as to which of the combatants brought on the difficulty,
there is substantial evidence tending to prove that the
defendant was the aggressor and that the assault was
with the felonious intent of wreaking his malice upon
Finnegan. As to the contention that the instruction
does not give the defendant the full benefit of the right
of self-defense, it is only necessary to say that his

rights in this regard are fully and properly covered by the instruction.

The seventh instruction given for the State is complained of as being erroneous on the ground that there was no evidence upon which to base it. It reads as follows:

"7.   The court instructs the jury that although previous good character is no excuse for crime, if actually committed, yet in determining the question of defendant's guilt or innocence, they will take into consideration the evidence in the case as to defendant's good character, and give it such weight as the jury may think it entitled to; but if from all the evidence in the case, including the evidence as to defendant's good character, the jury believe him guilty, they should so find by their verdict."

The testimony tending to show that the defendant was of immoral character was brought out by the State in the cross-examination of the defendant's witnesses for the purpose of discrediting him as a witness, and furnished no basis for the instruction with respect to his character for peace, quietude and good citizenship in the neighborhood in which he lived. But we are unable to see, under this state of facts, how or in what way the defendant could have been prejudiced by the instruction. It assumes that the defendant was a man of good character when the evidence upon this question was conflicting. It is not every bad instruction, or one unwarranted by the evidence in the case, that will justify a reversal of the judgment, and, unless prejudicial to the defendant, the judgment should not be reversed upon such ground. All errors made against a defendant in a criminal case are presumed to be prejudicial to him, but it is clear to our minds that the error complained of in this case was not only non-prejudicial to the defendant, but positively in his

favor, and he is, therefore, in no position to complain.

It is further claimed that said instruction numbered 7 and instruction numbered 9 are inconsistent under all the evidence, and tended to confuse the jury. We are unable to appreciate the force of this contention. The last-named instruction is free from error, and is not, as we understand it, in conflict with instruction numbered 7, which we have already ruled was unwarranted by the evidence.

Instruction numbered 9 is criticised upon the further ground that it assumes that the evidence shows former convictions of the defendant and is an improper comment on the testimony. The fact that the defendant had been convicted of one felony and several misdemeanors was not controverted, and an instruction assuming such fact to be true was, under the circumstances, neither improper nor erroneous. [Park v. Railroad, 178 Mo. 108; McLean v. Kansas City, 100 Mo. App. 625.]

The defendant contends that instructions 3 and 5, asked by the defendant, should each have been given. There was no error in refusing said instruction numbered 3, as it is bottomed upon the right of self-defense, which is fully covered by instruction numbered 4, given by the court. Instruction numbered 5, asked by defendant and refused by the court, would withdraw from the consideration of the jury the evidence as to the convictions of the defendant, as shown by the records of the justices' courts, for carrying concealed weapons. The contention that the court erred in refusing to give said instruction is based upon the fact that the indictment is against W. B. Priest while the judgments read in evidence are against Wm. B. Priest. It is not contended by defendant that the judgments are not against the same person, but that presumably they are not, and the burden was upon the State to

establish that fact. The defendant made no specific objection to the introduction in evidence of these judgments on the ground indicated, and he does so for the first time in this court. Again, W. B. Priest and Wm. B. Priest are prima facie the same person, and the defendant was properly designated in the indictment by the initials of his Christian or baptismal name. [State v. Stacy, 103 Mo. 11; State v. Sweeney, 56 Mo. App. 409; State v. Johnson, 93 Mo. 73.]

Complaint is made of some objectionable remarks made by the prosecuting attorney in his closing address to the jury, and to which counsel for defendant objected at the time. Upon objection made, the court remarked, "It is out of line; the jury should disregard the allusion." The prosecuting attorney then said, "Counsel withdraws the remark if out of line.". It seems to us that the court did everything necessary to remove any prejudicial effect that the remarks complained of might have had upon the minds of the jury; and the attorney having withdrawn them, nothing more could have been desired. Certainly, the judgment should not be reversed on acount of said remarks.

Finding no reversible error in the record, the judgment is affirmed. All concur.