THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, Appellant, v. ARTHUR P. CARSON, Respondent.

Springfield Court of Appeals, December 12, 1914.

1. **REAL ESTATE SALES: Vendor and Purchaser: Fraud: Rescission: Statement of Facts.** Facts stated in an action to recover certain land in which a counterclaim to set aside a contract of sale because of fraud and to recover payments made thereon.

2. **FRAUD: Statements Made Carelessly Without Regard to Truth or Falsity: Actionable.** A statement made carelessly, without regard to its truth or falsity, which proves to be untrue, is fraud and an action for fraud and deceit can be maintained by one who is thereby damaged.

3. **FALSE AND FRAUDULENT REPRESENTATIONS: Sale of Land: Rescission.** Certain false representations made by vendor

of agricultural land which induced the purchase thereof, examined and considered sufficient to entitle the purchaser to rescind.

4. **PRINCIPAL AND AGENT: False Representations of Agent: When Principal Liable: Sale of Land.** When the owner of land pays a broker or agent a commission to sell same and in effecting the sale, the agent makes representations which are false concerning the land and one is induced thereby to purchase, such owner, though not aware of the fraud, upon accepting the benefits of the transaction must also assume the burdens thereof and the fraud of the agent is chargeable to the owner, provided the representations complained of are such as would naturally fall within the apparent scope of the agent's employment.

5. **TORTS: Result of Negligence: Result of Fraud: No Distinction.** There is no reasonable distinction between a tort brought on through fraud and one brought on through negligence.

6. **FRAUD: Sale of Land: Principal and Agent: Misrepresentations: Statement.** Evidence reviewed and fraud of agent in sale of land *held* binding on principal.

7. **VENDOR AND PURCHASER: Ejectment: Set-off and Counterclaim.** Where it is sought to eject a defendant who went into possession under the title of plaintiff and who for some reason should be ejected, the defendant may, if he have an equitable counterclaim against the plaintiff, interpose and try it in the ejectment suit. On the other hand, where defendant went into possession through a stranger to the plaintiff, he must recover the value of the improvements made, which in equity he should have, by an independent action.

8. **VENDOR AND PURCHASER: Sale of Land: Action to Recover Possession: Set-off and Counterclaim.** Where a vendor of land seeks to recover same, the purchaser may set up, under Sec. 1807, R. S. 1909, as an equitable counterclaim, a right to rescind for fraud and to recover payments made.

9. **VENDOR AND PURCHASER: Sale of Land: Fraud: Rescission: Delay: Laches.** Purchaser of certain lands delayed a year and four months to rescind the contract because of fraud. Vendor's position was not changed by the delay. Conditions and circumstances considered and the delay *held* not sufficient to bar the right to rescind.

Appeal from Stoddard County Circuit Court.—*Hon. W. S. C. Walker*, Judge.

AFFIRMED.

*Wammack & Welborn* and *Chas. Liles* for appellant.

(1) The respondent visited and inspected the land, and there is no testimony that he was in any way hindered from making as extensive an investigation of it as he desired. Under the circumstances he cannot allege that he was defrauded. Morse v. Rathburn, 49 Mo. 91; Judd v. Walker, 215 Mo. 337; McFarland v. Carver, 34 Mo. 195; Dunn v. White, 63 Mo. 181; Wade v. Ringo, 122 Mo. 322; Bradford et al. v. Wright, 145 Mo. App. 623; Holland v. Anderson, 38 Mo. 55; Ordway v. Ins. Co., 35 Mo. App. 434; Slaughters, Adm. v. Gerson, 13 Wallace, 379. (2) Mere expressions of opinion or trade talk do not constitute fraud. Nor do mere loose talk and brag about the value of property. Franklin v. Holle, 7 Mo. App. 245; Anderson v. McPike, 86 Mo. 300; Chase v. Rusk, 90 Mo. App. 29. (3) One who claims the right to rescind a contract on the grounds of fraud, must act promptly. Lewis v. Brookdale Land Co., 124 Mo. 672; Harms v. Wolff, 114 Mo. App. 395; Lierheimer v. Life Ins. Co., 122 Mo. App. 381. (4) A broker who takes an option to purchase real estate at a stated price, is not the agent of the owner for making the sale. Benedict v. Pell, 70 N. Y. App. Div. 74, N. Y. Suppl. 1085; Dilworth v. Bostwick, 1 Sweeny, 581; Southack v. Land, 23 Misc. 515, 52 N. Y. Suppl. 687.

*Fort & Green* and *Mozley & Woody* for respondent.

(1) Where, in a negotiation between two parties, one of them induces the other to contract on the faith of the representations made to him, any one of which has been untrue, the whole contract is in this court considered as having been obtained fraudulently. Burnham v. Ellmore, 66 Mo. App. 621; Hardwood v.

Dent, 121 Mo. App. 108. (2) Nor is respondent barred from recovery because he visited the land, at appellant's request, before he bought it. Kendrick v. Ryus, 225 Mo. 166. (3) There is a distinction between actions at law for damages based upon fraud, and suits in equity for rescission of the contract based upon fraud. In a suit for rescission it is not necessary to show that defendant was guilty of willful and intentional fraud. All that is necessary is to show that defendant made representations which were in fact false, and that plaintiff relied upon them and believed them to be true and suffered damages in consequence thereof. Peters v. Lohman, 171 Mo. App. 482-3; Lynch v. Company, 135 Mo. App. 672. (4) Respondent promptly rescinded the contract when he discovered the fraud of appellant which led him into it. Taylor v. Short, 107 Mo. 393; Paquin v. Miller, 163 Mo. 102.

FARRINGTON, J.—The plaintiff is a foreign corporation authorized to do business in Missouri. The defendant for the past three years has resided in Stoddard county in this State. In December, 1910, the plaintiff owned several thousand acres of land in Stoddard county and surrounding counties in southeast Missouri. On December 31, 1910, the defendant paid to one W. Ross McKnight one hundred dollars as a part payment for eighty acres of land in Stoddard county which was then owned by the plaintiff, and took a receipt so stating, which receipt also contained a memorandum of purchase. The total price to be paid was thirty-seven dollars and fifty cents per acre. The vendor, the plaintiff, according to the memorandum, agreed to clear twenty acres of the tract at seven dollars and fifty cents per acre, this amount to be added to the purchase price. The first payment was to be one-tenth of the entire purchase price and was to be paid on or before January 10, 1911, and the remainder of the purchase price was to be paid in eight equal annual

instalments, evidenced by notes payable on the first day of each January beginning January 1, 1913, drawing interest at the rate of five per cent per annum, to be secured by a deed of trust. The memorandum further evidenced that during the year 1911 a slough on the land would be drained. On January 2, 1911, the plaintiff by its proper officers executed a warranty deed to the defendant for the land. This deed was delivered to defendant by W. Ross McKnight who received the first payment in cash and the notes for the balance together with a deed of trust in which William Collins (the general agent for plaintiff in Missouri concerning lands) was trustee. The notes were made payable to the order of the plaintiff, and they were accepted and held by plaintiff until default in their payment, when foreclosure proceedings occurred whereby plaintiff became the purchaser of the land at the price of two thousand dollars. Plaintiff then brought this suit to eject defendant from the land and for damages alleged to have been occasioned by defendant unlawfully withholding possession.

Defendant's answer admitted plaintiff's right to possession but denied that plaintiff was entitled to any damages, and set up a ground for affirmative relief, asking that the unpaid notes and the deed of trust be canceled, and further, that he be given damages sustained by him on account of certain fraudulent representations made to him by W. Ross McKnight through whom he was induced to purchase the land from plaintiff.

The court gave plaintiff judgment for possession, and on defendant's behalf ordered a cancelation of the unpaid notes and deed of trust and gave him judgment for $586.10 which represented the amount defendant had paid on the purchase price together with the taxes he had paid and interest on such amount.

186MoApp15

A brief statement of the facts will suffice to dispose of the case. The evidence showed without controversy that on January 2, 1911, the plaintiff owned the land in question and made a warranty deed therefor to the defendant and received from him the notes and deed of trust. These instruments were delivered by the parties through W. Ross McKnight, a resident of St. Louis. Plaintiff owned this tract together with thousands of acres that it was selling on the market. W. Ross McKnight and one Weeks undertook to carry through a colonization scheme by which they would sell forty to eight-acre tracts and locate the buyers around a central model or demonstration farm to be in charge of an expert. To do this required that they get a body of land comprising from a thousand to fifteen hundred acres and then to find purchasers for the tracts. To accomplish the scheme, which, from the advertisements and prospectus introduced in evidence, was Utopian in character, they (W. Ross McKnight for the most part) took up the matter with one Collins, a resident of St. Louis, who was the agent of the plaintiff having general control of plaintiff's unsold land. An arrangement, not necessary to detail in this opinion, was perfected whereby W. Ross McKnight could dispose of the plaintiff's land to buyers on certain terms, and Collins, after negotiating with the plaintiff, agreed to make conveyances to such buyers.

The defendant saw the advertisements of W. Ross McKnight's scheme printed in one of the St. Louis daily newspapers. He was a clerk working in East St. Louis on a salary and was not familiar with farming or agricultural land and so informed McKnight. He called on McKnight after reading the advertisement and received a prospectus of the scheme and a circular with McKnight's name stamped upon it. This circular was one put out by the plaintiff, a number of them having been turned over to McKnight by Collins when they perfected the arrangement to deed the lands. The

prospectus issued by McKnight contains many things contained in the circular issued by the plaintiff. It covers ten pages of the printed abstract, and under heavy headings it takes up, first, a description of the general nature of the scheme, then a description of southeast Missouri, and Stoddard county, followed by headings such as, ''Soil, Water and Rainfall,'' ''Crops and Stock Growing,'' ''Climate,''. ''Topography,'' ''Tract Selected,'' ''The Colony,'' and lastly, the terms of settlement. It contains many representations which are promissory in nature and many that might come under the term ''puffing,'' and others that border closely on representations of existing facts. The defendant was given an application to sign, entitling him to become a purchaser in the colonization scheme.

Defendant went with McKnight and looked over the land on a rainy day when the soil appeared black or dark. The natural color of the soil when dry was light. Defendant says, and we have no reason for doubting him, that W. Ross McKnight made the following representations which were relied on by him and which induced him to become a purchaser: That the lands were all well drained, and that this was not true. That arrangements had been made with the Iron Mountain Railway Company to place an agency at Reeds Spur which was very near plaintiff's property, and that at the time of the trial, which was several years after the representation was made by McKnight, no such agency had been estabished. That this land would not overflow, and that it does overflow.

. We are convinced after reading the evidence that these representations were untrue and were false and that McKnight knew they were false or did not have sufficient knowledge on the subject to warrant him in asserting that they were true. This brings his conduct within the rule laid down in Ray County Savings Bank v. Hutton, 224 Mo. l. c. 70, 123 S. W. 47, that a statement made carelessly without caring whether it be

true or false which proves to be untrue, is fraud, and such as that an action for fraud and deceit can be maintained by one damaged thereby. [See, also, Peters v. Lohman, 171 Mo. App. 465, 156 S. W. 783, and cases cited.]

It is true that a great many of the representations made by McKnight to defendant were in the nature of promises or descriptions of what would take place, and others that would probably escape criticism in an action for fraud and deceit because they were mere "puffing," and these of course standing alone would not sustain a charge of fraud. But where statements of existing facts are made by one knowing them to be untrue, or made carelessly, not caring whether they are true or false, followed by one being induced thereby to part with money to his damage, this will sustain an action for fraud and deceit. It is no answer to say that McKnight had faith in his project or believed in his scheme or that he himself lost a large sum of money in trying to put it through. Such a defense would make possible the perpetration of the most flagrant frauds and permit the wrongdoers to go free because he would say he believed what he was saying. Ordinary, sensible men require something of substance on which to base belief and not a mere fancy or an imagination; an expression based on such "belief" amounts to recklessness.

In order to hold plaintiff for McKnight's fraudulent representations we must examine the relation that existed between them. Collins was the *alter ego* of the plaintiff in this matter and he says that W. Ross McKnight sold this property to defendant as the agent of the plaintiff and that plaintiff paid him a commission for making the sale. McKnight was the only party that defendant dealt with, and it was McKnight who delivered plaintiff's warranty deed and carried out the contract made on December 31st, evidenced by the receipt showing that the lands were owned by plaintiff

and that it would make a warranty deed; and it was McKnight who accepted the first payment for the land together with the notes for the remainder which were made payable to the plaintiff and secured by a deed of trust, all of which were delivered by McKnight to the plaintiff.    Plaintiff afterwards wrote from its home office in Connectitcut demanding payment of the notes and interest as it became due.    And finally, after defendant had advised plaintiff of the representations made by McKnight, plaintiff foreclosed under the deed of trust which it accepted from McKnight, bought in the property, and then brought suit for damages against the defendant.    Enough was shown to evidence the relation of principal and agent.    In any event, the plaintiff did accept the benefits of the bargain made by McKnight, sought to enforce the contract, and to this day, so far as the record shows, in no way repudiated the transaction which was put through by McKnight. The law is well settled that where the owner of land pays a real estate agent or broker a commission to sell it and in doing so the agent makes false representations concerning the land which induce a customer to buy, such owner although unaware of the fraud, when he accepts the benefits of the transaction is also ladened with the burdens thereof, and in such case the fraud of the agent or broker is chargeable to the owner.    The cases go to the extent of holding an owner for the representations of an unauthorized agent if the owner adopts the trade made and accepts the benefits that flow from the bargain; the representations complained of, however, must be such as would naturally fall within the apparent scope of the agent's employment.    In our case, the false representations were made as to the character and formation of the land, its nearness to a railroad agency, that it did not overflow, and that it had natural drainage.    These things might naturally be expected to induce a sale of the property.    We find in the case of Millard v. Smith, 119 Mo. App. l. c. 711,

95 S. W. 940, the following quotation which the court in that case said is unquestionably the law: " 'There is no doubt of the general proposition that, if an agent is employed to effect the sale of lands for his principal, and he does so by means of false representations in respect to the land conveyed, even without authority or knowledge of his principal, the latter is chargeable with such fraud in the same manner as if he had known or authorized the same.' " In Williamson v. Tyson (Ala.), 17 So. 336, 338, this language appears: "The general rule of law that one who deals with an agent is bound to know the extent of his authority is fully recognized, and one absolutely necessary to the protection of a principal in all actions brought against him founded upon contracts made by an agent. The doctrine is equally as well established, and rests upon sound principles, that a principal who seeks to avail himself of a contract made by another for him, whether by an appointed or a self-constituted agent, is bound by the representations made and methods employed by the agent to effect the contract." [See, also: Judd v. Walker, 215 Mo. l. c. 334, 114 S. W. 979; Griswold v. Gebbie, 126 Pa. St. 353, 12 Am. St. Rep. 878; Haskell v. Starbird (Mass.), 25 N. E. 14; Busch v. Wilcox (Mich.), 47 N. W. 328; Green v. Waddington (N. Y.), 103 N. E. 964; Wilson v. McCarthy (Ore.), 134 Pac. 1189; Clough v. Dawson (Ore.), 138 Pac. 233; Porter v. O'Donovan (Ore.), 130 Pac. 393; Grover v. Hawthorne (Ore.), 121 Pac. 808; J. I. Case Threshing Mach. Co. v. Lyons & Co. (Okla.), 138 Pac. 167; Porter v. Woods, 138 Mo. l. c. 552, 39 S. W. 794; Gelatt v. Ridge, 117 Mo. l. c. 561, 23 S. W. 882; and The Clydesdale Horse Co. v. Bennett & Son, 52 Mo. App. l. c. 337.]

There can be no reasonable distinction drawn between a tort brought on through fraud and one brought on through negligence. The principal or master is held where the transaction was concerning his business and from the doing of which he derives benefit.

This rule works no hardship on a landowner because, in the first place, he can select who is to sell his property, and again, before accepting the negotiations of the agent he can inquire of the purchaser as to what representations if any the agent made. The reason for such rule is that where one of two innocent persons must suffer, it is nothing but right that the burden be saddled on the one who put it in the power of the wrongdoer to perpetrate the wrong. This entire question is thoroughly discussed in 2 Mechem on Agency (2 Ed.), sections 1984 to 1996 inclusive, preceded by the title, "Liability for Fraudulent Acts and Representations" (of an agent), where, in the footnotes many cases from the different States and England are cited as upholding the rule announced here. We therefore hold that the plaintiff is chargeable with the fraud worked on defendant by W. Ross McKnight.

Appellant contends that in this action of ejectment brought by it, where only title and possession of land is in issue, the defendant will not be permitted to answer by an equitable counterclaim basing his claim on the fraud alleged in the purchase of the land and seeking a cancelation of the unpaid notes for the balance and the deed of trust and the further affirmative relief by way of damages sustained on account of the fraud. Defendant's counterclaim set up the entire transaction and prayed for a cancelation. The land had already gone back to the plaintiff and the defendant made no claim to it either as to the title or the possession. The offer to return, therefore, that which he received was of necessity done away with, and he was acquiescing in plaintiff taking it back which it had done. Therefore, in order to get rescission, a cancellation and a return of the purchase money and the twelve dollars and twenty-eight cents paid as taxes while defendant owned the land, it was only necessary for him to show that a material misrepresentation which induced him to purchase had been made. For this remedy he was

not required to go further and prove the actual fraudulent intent which is essential in an action for fraud and deceit. The counterclaim did contain many items for which he claimed damages that would require proof of scienter. It is unnecessary to discuss this because on an examination of the record it can be seen that the court only allowed a judgment for an amount that covered the damages recoverable in a suit to rescind; that is, a return of the purchase money paid plus the twelve dollars and twenty-eight cents (the tax item), together with interest on the whole. There can be no doubt that the court treated defendant's counterclaim as an equitable action seeking a rescission of the contract of purchase. When sued in ejectment, defendant may answer setting up an equitable defense. This proposition requires no citation of authority. If that equitable defense strikes at and would bar plaintiff's right of recovery it is very proper that defendant should be permitted to make such defense. A defendant, however, in ejectment may interpose an equitable counterclaim under our law in certain cases where the same would not defeat a recovery by the plaintiff. In other cases we find the ruling that the only way for a defendant in ejectment to obtain the value of his improvements and purchase money, for instance, is to proceed under the occupying claimant's statute. The distinction is made in the case of Henderson v. Langley, 76 Mo. l. c. 228, where this language appears: "It has been repeatedly held by this court that when it appears in an action of ejectment, that the defendant has purchased land from the plaintiff, or in administration proceedings, or at sales under mortgages, and has paid the purchase money, entered into possession and made improvements in good faith, but failed to obtain the legal title intended to be sold, and could not have specific performance the owner of such legal title, or his grantee having notice of such facts, will not be permitted to eject such purchaser without ac-

counting for the purchase money and paying for the improvements made. [Shroyer v. Nickell, 55 Mo. 262; Evans v. Snyder, 64 Mo. 516; Sims v. Gray, 66 Mo. 614; Mobley v. Nave, 67 Mo. 546.] But where, as in the case at bar, the defendant enters into possession under a stranger to the title of plaintiff, in order to obtain the value of any improvements made by him, he must proceed as provided by sections 2259, 2260 and 2261 of the Revised Statutes. The claim for improvements made under the sections cited cannot be presented or heard in the action of ejectment. It is intended to be an independent proceeding, and can only be instituted after final judgment of dispossession shall have been rendered against the defendant in the suit of ejectment." The distinction is clearly shown to be that where it is sought to eject a defendant who went into possession under the title of the plaintiff and for some reason should be ejected, he may, if he had an equitable counterclaim against such plaintiff, interpose and try it in the ejectment suit; but, on the other hand, where he went into possession or is claiming title or possession through a stranger to the plaintiff, then he must recover the value of improvements made which in equity he should have by an independent action as provided by the statutes. With this distinction in mind, the cases cited by appellant, to-wit, Williams v. Sands, 251 Mo. 147, 158 S. W. 47; Fairchild v. Creswell, 109 Mo. l. c. 39, 18 S. W. 1073; Jasper County v. Wadlow, 82 Mo. l. c. 179; McClannahan v. Smith, 76 Mo. 428, and Henderson v. Langley, 76 Mo. 226, are clearly inapplicable to the facts here, where the plaintiff went on the land through and under plaintiff's title. A number of cases in this State uphold the right of the defendant in our case to maintain his equitable counterclaim. [See, The Hannibal & St. Joseph R. Co. v. Shortridge, 86 Mo. 662; Foote v. Clark, 102 Mo. l. c. 408, 14 S. W. 981; Hutchinson v. Patterson, 226 Mo. l. c. 182, 126 S. W. 403; Patillo v. Martin, 107 Mo. App. l. c.

659, 83 S. W. 1010; and House v. Marshal, 18 Mo. 368.] Attention is called to the distinction in State ex rel. Jiner v. Foard, 251 Mo. l. c. 56, 157 S. W. 619.

The land in this case was the subject of plaintiff's action. The counterclaim of defendant was connected with that subject-matter, and hence, under section 1807, Revised Statutes 1909, a proper item for counterclaim. Bliss on Code Pleading (3 Ed.), section 126, page 215, defines "subject of the action" as follows: "Thus, in an action to recover the possession of land, the 'right' is the right of possession; the 'wrong' is the dispossession; the 'object' is to obtain possession; and the 'subject,' or that in regard to which the action is brought, is the land, and usually its title." It is held in the case of Lane v. Dowd, 172 Mo. l. c. 173, 174, 72 S. W. 632, that the subject-matter of the action in an ejectment suit is the land, and that different transactions, if connected with the subject-matter of the action, can be joined in a petition or set up as a counterclaim. [See, also, Grimes v. Miller, 221 Mo. l. c. 639, 640, 121 S. W. 21.] In an action to replevin a piano, a possessory action for personal property similar to ejectment for land, it is held that the piano is the subject-matter of the action. [Small v. Speece, 131 Mo. App. 513, 110 S. W. 7.]

Appellant contends that defendant did not act promptly enough after discovering that the alleged fraudulent representations had been made by McKnight, and calls attention to a number of letters introduced in evidence written by defendant to McKnight and Collins with reference to the improvements being made, the roads, the slough, and the sale of the "back" forty acre tract. Defendant testified that when he bought the eighty acres McKnight agreed to relieve him of the "back" forty, and some of his correspondence relates to that. In one letter written as late as December, 1911, he said he liked the country and wanted to stay there. On May 7, 1912, a year and four months

after his purchase, he writes to McKnight and Collins informing them that he had a matter to settle with them and the plaintiff. He testified that they sent one Steele, the agent of plaintiff residing at Dexter, Mo., to him, and that he then notified Steele of the false representations made by McKnight. The evidence discloses that some time after this he brought a damage suit against plaintiff herein which was dismissed, the reason not appearing.

Appellant cites cases holding that—"Unreasonable delay, especially if accompanied with acts which recognize the contract as in existence, will be construed as condoning the fraud and acquiescing in the validity of the contract. [Harms v. Wolf, 114 Mo. App. 387, 395, 89 S. W. 1037; Lierheimer v. Insurance Co., 122 Mo. App. 374, 381, 99 S. W. 525.]"

There is, however, nothing in the record which shows that plaintiff in any way suffered or changed its position by the delay on defendant's part to assert his rights growing out of the fraud. Such being the case— the delay not having caused an altered position of the parties—this would not be a bar on the principle of laches. [Newman v. Newman, 152 Mo. 398, 54 S. W. 19; Bradshaw v. Yates, 67 Mo. 221.] In the case of Short v. Thomas, 178 Mo. App. 1. c. 419, 420, 163 S. W. 252, we said: "It has been often held that lapse of time short of the period fixed by the Statute of Limitations will not bar equitable relief where the right is clear and there are no countervailing circumstances" citing Cantwell v. Crawley, 188 Mo. 44, 86 S. W. 251; Summers v. Abernathy, 234 Mo. 1. c. 167, 136 S. W. 289; Lindell Real Estate Co. v. Lindell, 142 Mo. 1. c. 79, 43 S. W. 369; and Spurlock v. Sproule, 72 Mo. 1. c. 511. See, also, 6 Cyc. 301. We therefore hold that since defendant was unacquainted with the country to which he had moved as well as the very business he had engaged in, the delay of one year and four months did not make him guilty of laches. The most that can

be said of his letters is that they tend to contradict his statement that the representations were made and that they were untrue in that they are silent on the subject of misrepresentations. But taking into consideration his situation and the circumstances under which the letters were written, we do not believe they contradict his positive testimony concerning the fraudulent representations. We are, therefore, of the opinion that the judgment of the trial court should not be disturbed and it is accordingly affirmed. *Sturgis, J.,* concurs herein on the ground that there is sufficient misrepresentation shown to warrant a rescission of the contract. *Robertson, P. J.,* dissents.